## OLE B. BULL *vs.* JULIUS SCHUBERTH.

The question of partnership or no partnership, when arising between the parties themselves, is to be gathered from the intention of the parties themselves, to be drawn by analogy from principles of law applied to the facts and circumstances developed in the case.

The mere fact that the remuneration of the plaintiff was to depend upon the contingent profits of concerts, does not, of itself, indicate a partnership. This is not an uncommon mode of paying agents and servants.

What is a variance between a special contract and that proved, and how, in a prayer for the court's instruction, the particular variance may be defined, as required by the act of 1825, ch. 117?

The prayer must be confined to the special count.

If a special agreement has been put an end to by defendant, or the performance of it, on the part of the plaintiff, be prevented by some act of the defendant, the plaintiff may recover under the common counts, whatever may be due for so much of the contract as has been performed.

After evidence has been introduced, without objection, it is too late to object to it.

When it becomes important to establish the *date* of a concert, how may it be proved?

It is a general rule, that if one party offers a part of the other's declarations and statements against himself, he has a right to insist, that all which he said at the time must go to the jury, but it is not proper to introduce his previous and subsequent conversations and statements with different persons, touching other irrelevant and distinct matters, under a pretext, that it was necessary to explain what he had said upon another subject.

When the defendant has dismissed the plaintiff, it is not necessary for the latter to make any tender of readiness to perform his part of the contract.

THIS is an action of assumpsit, brought by Schuberth against Bull, under the following circumstances, on December 26th, 1843.

Bull being an eminent performer upon the violin, and Schuberth, a music dealer of Hamburg, in Germany, they agreed to make a musical tour through the United States, and accordingly executed a written agreement to that effect on the 10th of October 1843. A proper translation of that agreement will be found on pages 8 and 9 of the record, and it will appear thereby (article 2) that Schuberth was to arrange and direct

the concerts, and undertake and attend to the concert accounts. For this, he was to receive one-third of the nett proceeds of each concert, and if these should, in any one concert, exceed four thousand francs, (say $800,) he was to receive one-fourth thereof, only. Bull, upon his part, obligated himself (article 3) to play at such concerts as Schuberth might arrange. This understanding was to bind the parties until the end of April 1844, unless sooner terminated, by consent. Each was to defray his own share of the travelling expenses.

The declaration consists of one special count, and the common counts. By the special count it appears, that the suit is brought to recover one-third of the nett proceeds of three concerts, two of which took place at Baltimore and one at Washington; the nett proceeds of none whereof, it is alleged, exceeded four thousand francs, and the one-third of which nett proceeds amounted in all, as it is further alleged, to the sum of $766.66⅔.

The appellant pleaded the general issue.

The plaintiff below, after proof of the contract, introduced under a commission the evidence of Peter Ritchings, who deposed, that in December 1843, he engaged the appellant, Bull, to perform at the Holliday street theatre in Baltimore, on the nights of the 18th and 20th of that month. Bull was to receive two-thirds of the gross receipts of each night, fifty dollars to be first deducted, upon each occasion, for the benefit of the witness. The engagement was made for Bull by Schuberth. Bull did not comply with the engagement. He gave a concert in New York on December 18th. The departure from the agreement was announced to Ritching by a letter from Schuberth, in which he simply says, under date of December 12th: "The days of the performances are to change. We intend to give concerts in your Holliday street theatre the 21st and 23rd of December. * * * * * Can you not give this two days, then we must give concert in saloon room." Ritchings was compelled to acquiesce, and his concerts took place on the 21st and 23rd. As Ritchings states, and the documents he produces show, Schuberth acted as

agent for Bull in making both the engagements, but before the concerts came on Bull and Schuberth had quarrelled, as they both stated to Ritchings, and Bull had employed a new agent. Schuberth did not act as agent in preparing or arranging the concerts at the Holliday street theatre, but notified Ritchings not to pay any thing to Bull, except through his (Schuberth's) hands, and stood at the door to endeavor to receive Bull's share of the emoluments, which amounted to $424.66 for the first concert, and $367.34 for the second. Bull reluctantly allowed Ritchings out of this $150 damages, for the violation of the first agreement, and the balance, $642, was paid to Bull's new agent.

Schuberth further gave evidence by George Willig, that on the mornings before the two concerts given by Bull in Baltimore, in December 1843, the witness, by the advice of Schuberth's counsel, had gone to the theatre with Schuberth, who purposed offering his services in reference to the concerts, but that Schuberth, on neither occasion, approached Bull or made any tender of his services. Bull, on both occasions, was engaged at rehearsals, and Schuberth, besides, was afraid of him. On the evenings of the concerts, Schuberth (the witness states) went to the theatre and offered the agent of the theatre to take the tickets, but Schuberth, on neither occasion, saw Bull or tendered any service to him personally, so far as the witness knows.

The declaration contained a count on a special agreement, and the common counts. The verdict being for the plaintiff the defendant appealed, and upon the appeal insisted upon the various exceptions, which he took in the progress of the trial.

*1st Exception.* On this state of facts the defendant predicated four prayers, to this effect:

1st. That the contract, as proven, established a partnership, and precluded a recovery at law.

2nd. That the plaintiff could not recover on the common counts, and that there was a variance between the contract proved and that specially declared on.

3rd. That if the forfeiture of $150 was incurred to Ritchings, through Schuberth's mismanagement, the whole loss thereof should be borne by Schuberth.

4th. That if Schuberth so mismanaged the concerts as to give Bull a right to discharge him, and Bull had so rightfully discharged him, Schuberth had no right to recover.

The court rejected all the prayers, and gave an instruction of its own, in lieu of the third and fourth, leaving out the question as to the $150, raised by the third, and altogether varying the effect of the fourth. From the rejection of his prayers Bull appealed, and this forms the matter of the first exception.

*2nd Exception.* For the further purpose of proving a concert in Washington previous to suit brought, and of showing the amount of its proceeds, the appellee called John H. Hewitt, who testified, that he was present at the first concert given by Bull in Washington, and that there were between seven and eight hundred persons in attendance. The witness could not state the year nor the day, being only able to remember that it was "about christmas time." With a view to fix the date by witness, the appellee's counsel asked him, whether he recollected that an article relating to the concert appeared in the National Intelligencer shortly after the concert was given? The appellant objected to the question, but the court allowed it to be asked, and the appellant's second exception is taken to the overruling of this objection.

*3rd Exception.* The appellee then put the question to Hewitt, who answered, that one of the reporters of the Intelligencer took his (Hewitt's) opinion about Bull's performance at the concert in question, and that in two or three days after the concert an article did appear in the Intelligencer, conforming to the opinion the witness had given the reporter. The witness said he could not recollect the terms of the article, whereupon the appellee produced a file of the Intelligencer for 1843, and pointing to an article in the paper of December 27th, asked witness whether, upon seeing said article, he could recollect or identify it as the one to which he alluded?

The appellant objected to the question, and to the witness being permitted to refer to any article in the Intelligencer to determine the date of the concert. The court overruled the objection and allowed the question. The appellant took his third exception.

*4th Exception.* The witness, Hewitt, in reply to the last described question, answered, that an expression in the article referred to brought it distinctly to his recollection, and he remembered it as that which had appeared two or three days after said concert.

The plaintiff further, in order to shew the time of the concert in Washington, proved by George Willig, that he, Willig, went with Mr. Mayer, the counsel of Schuberth, to the Exchange Hotel in Baltimore to see Bull, in order to try and arrange the difficulty between the parties. While they were there, sundry theatre managers came in, and made arrangements with Bull for concerts in Richmond and Washington, and it was agreed between them and Bull, that those concerts should take place after the concerts in Baltimore. The witness did not detail, nor was he asked by the counsel of Schuberth to detail any part of the conversation which took place between Bull, Mr. Mayer and himself, but merely that which took place between Bull and the theatre managers. The defendant's counsel then asked the witness to state what took place between Bull, Mr. Mayer and himself? but the plaintiff's counsel objected, and the court sustained the objection; whereupon the defendant took his fourth exception.

*5th Exception.* The defendant then recalled Willig, and inquired whether he had had a conversation with Schuberth in reference to the contract in question. Witness stated that Schuberth had told him he had had a difficulty with Bull, who refused to give him the compensation provided in the contract, which he then shewed witness. Witness suggested that it would be better to take less than go to law. Schuberth replied, that while in New York or Philadelphia he had made a new agreement or arrangement to take less, but that Bull

had refused to pay him that, and he desired Willig to name him some counsel.

The witness, being re-examined by the plaintiff, stated, that as he understood what Schuberth said, it was that he had made the concession to Bull, as a peace offering—that he was delicately situated in this country—that Bull had had his services and wanted to get rid of him. Schuberth did not say that the first contract was rescinded. On the contrary, he insisted that he had a right to claim under it.

The plaintiff further proved by Mr. Emery, the lessee of the National theatre, Washington, that the witness had, in 1843, engaged Bull to give two concerts in that theatre, and that, just before or after christmas of that year, Bull gave the first of these concerts.

On cross-examination the witness stated, that Bull said to him in conversation, that he had quarrelled with Schuberth and had dismissed him, because he was making too much money out of him; that when he, Bull, had made the contract in Europe, he was ignorant how much money he should make in this country, and Schuberth had taken advantage of his ignorance; that he could do better without Schuberth, who was, besides, a disagreeable person, and he did not like him.

On re-examination the witness stated, that Bull had said nothing about having made a new contract in New York, or about Schuberth having deranged his concerts; that Bull saw he had made a mistake in dates, and had thought best to play at Philadelphia, as the largest city, paying to Ritchings $150, as a penalty for not having appeared in Baltimore, according to his engagement. Schuberth was in Washington, but made no offer or tender of his services in regard to the said concert there.

Mr. Emery further proved for the plaintiff, that he, Emery, paid Bull $500 for the first concert in Washington, on the night of said concert, he (Emery) handing the money to his own agent, Barton, to be delivered to Bull. Bull, the next day, went to Baltimore, whence he returned the day after and gave his second concert for witness, for which witness paid

him on the night of his performance. Bull did not, on this second night or at any other time, make any demand on witness for the proceeds of the first night's performance. On the first night Bull gave a receipt, which has since been destroyed by fire.

Defendant then offered evidence by Mr. Barton, that he did not remember whether the money was paid to Bull on the night of his performance in Washington; that it is not usual to pay to stars the same night they perform, unless they are going away next day, and witness does not remember whether Bull left Washington the day after the first concert. For the second concert Bull was paid on the night thereof.

The appellee then offered the following prayers:

5th. That the contract proved amounted to a partnership.

6th. That there was no evidence to maintain any count of the declaration, there being a variance in certain specified particulars essential to be set forth, between the contract pleaded and that proven.

7th. That if the jury should believe from the evidence, that Schuberth had so improperly arranged or altered the times of the concerts in Baltimore, as to make Bull liable to the penalty of $150, which Ritchings exacted and Bull paid, then Schuberth should bear the whole loss of the said $150.

8th. That if the jury should find Schuberth guilty of improper arrangement and alteration of the said concerts, so as to make Bull liable to the said penalty, Bull had a right to discharge him, and if the jury should find that Bull had so rightfully discharged him, before the concerts set forth in the declaration, Schuberth was not entitled to recover.

9th. That before Schuberth could recover, the jury must find that, at or before each and every of the concerts declared for, he tendered himself ready, and offered Bull to arrange and direct each of said concerts, according to the tenor of the contract declared on and proven, and was prevented from so doing by Bull, or his orders and directions.

10th. That Schuberth could not recover under his declaration, if the jury should believe that prior to the concerts in

Baltimore and Washington, the parties had entered into a new agreement, different from that set forth in the declaration, and by which Schuberth had agreed to receive other and different rates of compensation.

11th. That if the jury should believe Schuberth did not tender or offer himself ready to perform his contract at Baltimore and Washington, as he alleges in his declaration, he could not recover under that declaration, even though he had been previously discharged by Bull, and was prevented by such discharge from making such tender or offer.

The appellee likewise offered a prayer, to the effect: That if Schuberth accompanied Bull to America, acted as his agent under the contract, and arranged the Baltimore concerts, after which, but before the concerts in Baltimore and Washington actually took place, Bull discharged him, without due cause, (under the court's previous instructions:) and further, if, before the bringing of the suit, the proceeds of the concerts in Baltimore and Washington were paid to Bull, then Schuberth was entitled to recover a proportionate share thereof from Bull, as money had and received to his use.

Further, that unless the original contract was absolutely rescinded in reference to Schuberth's quantum of compensation, (according to the court's previous instruction,) Schuberth was entitled to recover one-third of Bull's receipts at the said concerts, deducting one-third of the $150 paid to Ritchings as a penalty, and that if the original contract was in fact so absolutely rescinded, Schuberth was still entitled to recover such proportion, less than one-third, as the jury might find reasonable, allowing proportionate abatement on account of the said $150.

The court granted the appellee's prayer, and refused those of the appellant, giving, however, two instructions of its own in lieu of the appellant's ninth and eleventh prayers, modifying the same by confining their application to the special count of the declaration, thereby affirming the right of Schuberth to recover under the common counts.

To the granting of the appellee's prayer and the rejection of his own, the appellant took his fifth exception.

The case was argued before ECCLESTON, TUCK and MASON, J.

By *Johnson, Jr.*, and *Wallis*, for appellant, and *Brent* for the appellee.

*Johnson, Jr.*, for the appellant.

The appellee can claim only for concerts in Baltimore, as there were no arrangements for any in Washington. The only material counts in the declaration are those on the special agreement for work and labor, and money had and received.

The agreement between them, it is insisted, constituted them partners, and the appellee's remedy was in equity, and not at law. See *Story on Partnership*, 2nd sec., p. 2, for a definition of a partnership. See, also, 27th sec. and 23rd sec. By the terms of this association, the appellee was to share the "nett profits." *Story*, sec. 49. 1 *Story C. C. R.*, 371, *Hazzard vs. Hazzard*.

It was intended that they should be partners, having agreed upon an artistical tour. In 2 *H. Blk.*, 235, we have a case, in which two were partners, not *inter se.*, but so far as other parties have dealings with them. 4 *East.*, 144, *Hescot vs. Blanchard.* 16 *John.*, 34, *Dobb vs. Dobb.*

It is said on the other side, that partners may sue at law. But in what cases? *Bissel on Part.*, 9th vol. of *Law and Equity*, p. 123.

The appellee cannot in this case succeed on the special agreement, because of a variance in the agreement declared on and that proved. The agreement says if the receipts exceed, the count says if they do *not* exceed. 2 *Chit. on Pl.*, 304, 307. 10 *Serg. & Rawle*, 236. 3 *Phill.*, 563, note 398, p. 503. 34 *Eng. C. L. Rep.*, 154.

It was incumbent upon him to prove the services stipulated to have been rendered by him. The proof is, that he

went to tender his services, but did not. 1 *Phill. on Ev.*, 206, *Cowens' ed.*

Can he resort to the common counts? The plaintiff can resort to the common counts, where the agreement is departed from by the plaintiff and the defendant acquiesces; where a special agreement is not proved, or has been performed by the plaintiff, or he has been hindered from the entire perform-ance of it by the defendant. 1 *Leigh's Nisi Prius*, 77, *marg. p. Buller's N. P.*, 139. *Chit. on Contracts*, 169. 4 *Bos. & Pul.*, 351. 3 *Taunton*, 52. 13 *John.*, 94. 9 *Peters*, 565. 14 *Verm.*, 311. 3 *Hill, (S. C.,)* 223. 1 *How. Miss. Rep.*, 166. 7 *John.*, 132. 10 *John.*, 38. 7 *Pick.*, 181. 1 *Dane's Ab.*, 223. 2 *Dane*, 45. 2 *Green. on Ev.*, secs. 103, 104.

If he can recover on the common counts, the plaintiff must show that he has done every thing that the contract requires him to do. 61 *Eng. C. L. R.*, 435. 1 *Sab. (N. J.) Rep.*, 340. 5 *Gilman*, 298. 1 *Chit. Pl.*, 341. 3 *Bos. & Pul.*, 464. The plaintiff must show, that at the time when the money came into the hands of Bull, he was entitled to it. As to the $150: If the plaintiff be not responsible for it, Bull's profits might be swallowed up in forfeitures. Fourth exception. Mayer the agent of the plaintiff, and any decla-ration made by him, a part of the *res gestæ*. 9 *Peters*, 689. If the plaintiff introduces any part of the conversation, the defendant has a right to call for the whole of it.

We ask a reversal of this judgment, upon all of the follow-ing grounds:

1st. That the agreement proven in the cause amounts to a contract of partnership, the remedy upon which is to be sought in a court of equity.

2nd. That the appellee could not recover, upon the com-mon counts, on his proof, and that there is a material variance between the contract set forth in his special count and that given in evidence.

3rd. That on the hypothesis assumed in the appellant's third and seventh prayers, the appellee was justly chargeable with the whole loss of the $150, paid by way of penalty to

Ritchings, and that the court erred in refusing so to instruct the jury.

4th. That on the hypothesis assumed in the appellant's fourth and eighth prayers, if the appellant, being entitled to discharge the appellee from his service, had done so, such discharge had the legal effect of destroying any right of the appellee to a share of the proceeds of the concerts proven; and the court erred in refusing so to direct the jury.

5th. That even if the appellee had been improperly discharged by the appellant, prior to the concerts given in evidence, he was nevertheless bound to allege and shew, either that he had tendered his services to the appellee, and offered himself ready to arrange and direct his concerts according to the agreement, or that he was prevented from so doing by the appellant, or by his orders and directions.

6th. That the appellee having alleged in his special count, that he had actually tendered and offered himself ready to arrange and direct the concerts, was bound to maintain that allegation by proof, and could not recover on the special count in default thereof.

7th. That if, prior to the concerts, a new arrangement was entered into between the parties, prescribing other and different rates of compensation from those fixed by the only contract in evidence, the appellee could not recover on the special count, because of the variance; nor on the common counts, because of his defect of proof as to the nature and extent of his rights.

8th. That the court erred in permitting Mr. Hewitt, the appellee's witness, to refresh his memory as to facts and dates, by looking at the article in the National Intelligencer, the same not being a memorandum of facts written by himself, or by his direction, or in his presence.

9th. That the court erred in allowing the introduction of the article from the National Intelligencer as proof, *per se*, in whole or in part, of any fact, it being no act of either party, or of the witness Hewitt, but altogether *res inter alios* and hearsay, and not belonging, in any way, to that class of his-

torical writings or public documents, which are of themselves admissible as evidence, or prove themselves.

10th. That the appellee having given evidence, by Willig, as to a portion of his interview with the appellant at the Exchange Hotel, the appellant was entitled to shew, by the same witness, what transpired during the whole of it.

*Brent* for appellee.

Was there a partnership? There was no capital in trade, except musical genius; no joint stock; nothing but an artistical tour.

It is true, that one may furnish capital and the other labor. This case may be likened to that of a farmer, who employs an overseer, and is to give him a certain proportion of the profits.

Here is no secret partner, who furnishes the capital, and, as between the parties themselves, there is no partnership, unless there be a community of interest. Here talent was the only capital; the appellee to fiddle, and thereby attract an audience. 5 *Eng. Rep. of Law and Equity, p.* 72.

Even if in this case there was a partnership, *non sequitur,* that the plaintiff could not recover. The prayer is too general, according to our act of 1825; it does not state the ground specifically.

The defendant, it is contended, has offered no evidence which will sustain any count, and there is a variance between the contract declared on and that which is in proof.

There is evidence to maintain the special count as to the Baltimore concerts. These were arranged by the appellee, and affirmed by Bull, by playing at them.

By the contract, the appellee to do three things:—1st. To arrange the concerts. 2nd. Direct the same, if necessary. 3rd. Undertake and attend to the concert accounts, immediately after each concert.

For these services, he was to receive from the appellant one-third of the nett profits. He did the first. Discharged by the appellant, and therefore could not do the rest.

If the appellant, holding the money, had said, S, you need not settle the accounts, I have got some one else, or have done it myself, the appellee might still have recovered on money counts, or on the special contract set forth. 2 *H. & J.*, 461. 1 *Bacon's Ab.*, 449.

The prayer strikes at all the counts and was properly rejected; it denied the right to recover at all.

When an allegation of notice or demand is supported by excuse. 3 *Cow.*, 252. 2 *John.*, 274. 5 *Pick.*, 136. 1 *Peters*, 98.

Where plaintiff performs a special contract, he can recover on money counts. 2 *H. & G.*, 295. 7 *H. & J.*, 133. 11 *Wheat.*, 250.

Offer to perform is the same as performance. *Chitty on Contracts, (last ed.,)* 737 '8. 5 *Bing.*, 132. 1 *Bacon*, 453. 4 *Camp.*, 375. 1 *Starkie's Cases*, 198.

The variance now suggested was never before noticed, and if pointed out in the court below, the mistake could at once have been corrected. The prayer is not warranted by act of 1825. The objection is not to the admissibility of evidence; to its admissibility no objection was made. As to act of 1825: See 2 *Gill*, 47. 4 *Gill*, 227.

The prayers speak of a variance, but is not confined to any one count; the plaintiff, it is said, cannot recover on any count, because of the variance. Although it may be that the plaintiff cannot recover on the special count, yet, may he not on some of the general counts? An outstanding, special contract must be declared on, but not an executed contract. If there has been only a partial performance, and the defendant has been benefitted by it, the value may be recovered on a general count. See 7 *Gill*, 85, *Brooke vs. Waring*. 2 *H. & J.*, 461. See 466. 11 *Wheat.*, 250. 7 *H. & J.*, 133. 1 *Chit. on Con., (old ed.,)* 273. 6 *Moore*, 114. 1 *Conn.*, 179, 1 *Bac. Ab.*, 457. *Con.*, Letter G. 4 *Camp.*, 375. 5 *Bing.*, 132. 2 *Green. on Ev.*, 103 and 104 secs.

The third prayer seeks to saddle the appellee with $150 damages, exacted of appellant for breaking his first engage-

ment.   This he allowed himself without any proof of damage, and was not binding on the appellee.   The appellant certainly participated in the breach of the engagement by playing elsewhere, and receiving the proceeds, and yet the court allowed the appellant a *pro rata* of the $150.

The National Intelligencer was produced merely to fix a date, by reference to an article read at the time in that paper by the witness, and which was identified by him, that the concert took place the night before the suit was brought.

An attempt was made to set up a new agreement.   This was contradicted by the testimony, but, even if proved, a recovery could be had on a *quantum meruit*, especially as it did not appear what the new agreement was.

In order to a recovery, it is insisted, that there must be proof of a tender by appellee of his services, both at Baltimore and Washington, as averred.   Now the evidence shows, a performance or offer by the appellee, certainly at Baltimore. This will justify a refusal of the prayers which are made to bar the whole action.   There is no point ruled or excepted to, touching the necessity of a tender in Washington.

It is the practice of Judge Taney, and in other courts of the United States, to refuse the instructions prayed, and to grant substitute instructions.   If these give all the law which the defendant had a right to ask, he has no cause to complain, and the judgment of the court below cannot be reversed.

*Mayer* on the same side.

There was no evidence here of a partnership *inter se.*, whatever might be the case *quoad alios.*   It is denied, however, that as to others, the agreement which entitled the appellee to a certain portion of the nett profits, constituted a partnership.   The only business of the concern was to play the fiddle, which was the exclusive function of the appellant.   It is, however, settled law, that as between themselves, their mutual rights were not limited to equity jurisdiction.   5 *Eng. R. of Law and Equity*, 67.

An averment that a party has tendered himself for perform-

ance of an undertaking, is sustained by evidence that the other party refused to let him perform it. Every act, like every stipulation, is sufficiently stated, if alleged according to its effect. 11 *Wheat.*, *Columbia Ins. Co. vs. Catlitt.*

Even if the plaintiff below could not recover on the special count, he might upon the common count, for work and labor, as the plaintiff below was arbitrarily dismissed, because, according to the proof, the bargain was an unprofitable one. 1 *H. Blk.*, 239. 11 *Wheat.*, 250. 1 *Stark. R.*, 198. 2 *Eng. C. L. R.*, 354.

If it appears on the record, that the party had a right to recover, and must prevail on a second trial, the court will not send the cause back, even if there be error, in a particular point, reviewed by the court on error. 3 *G. & J.*, *Bosley vs. Chesapeake Ins. Co.*

The witness Hewitt had a right to refresh his memory, not as to a fact, any thing that had been transacted, but only as to a collateral subject of date, by recurring to any event, and, if so, to a newspaper publication. He had a right to search the files of a newspaper, admitted too without objection, and the plaintiff's counsel had a right to assist him. If a witness describes a bond referred to by him, it would not be a prompting of his memory, to show him a particular bond, and ask him whether that is the bond to which he testifies.

The conversation ruled out in this case had no relevancy to the only point of fact, which it was attempted to elicit, by recurring to or showing the conversation of the theatre managers.

*Wallis.* Does the agreement amount to a partnership? This is a question raised by some of the prayers. If it be a partnership, it puts an end to the case *at law.*

Whether it be a partnership, the authorities tell us, (see 6 *Gill*, *Kerr vs. Potter,*) depends upon the intention of the parties. They are to commence *together* the artistical life, each to defray his own expenses. The appellant, it is true, is to play the fiddle, and is to attract the company. But then the

appellee is to arrange the music, and to contribute his skill in directing the concert. We are told what is to take place, if agreeable to the interest of both parties. 3 *Gill*, 363. 2 *H. & G.*, 300. Each is to contribute what is required of him, in order to draw the company, and secure the profits of their joint skill and labor.

The appellee in this case was not entitled to a verdict upon the special count, because of a variance, nor could he on the count for work and labor, or other common counts, because there was no evidence to support them. The court, at the instance of the plaintiff, instructed the jury, that the plaintiff was entitled to recover for the concert in Washington, as well as in Baltimore, on the common counts, and, yet, certainly he did not arrange them in Washington.

An assumpsit lies upon the contract which the law implies, upon proof of the work done, but no contract can be implied for work not done. *Brown on Actions at Law*, 45 *L. L.*, 484. When nothing is to be done but to pay money, the general counts may be resorted to. 34 *Eng. C. L.*, 154. 1 *W. H. & G. Exch. Rep.*, 295. 20 *Serg. & Rawle*, 236. 11 *Wheat.*, 250.

Appellee cannot recover on the special count. 1 *Green. on Ev.*, sec. 66. The entire consideration and the entire act to be done must be stated. 2 *Gill*, 212. 4 *G. & J.*, 277.

If the $150 penalty was incurred by the mismanagement of the plaintiff, he must pay it; if it was the fault of the defendant, he must pay it.

A man may, in order to refresh his memory, refer to a memorandum made by himself. Could the witness refer to the National Intelligencer, in order to ascertain that a concert took place on a particular day?

MASON, J., delivered the opinion of the court.

This is an action of assumpsit, instituted by the appellee against the appellant, under the following circumstances: Ole B. Bull, the celebrated fiddler, or (in his own more fashionable and elegant parlance,) "Knight, violin virtuose," agreed with

Julius Schuberth, a music dealer of Hamburgh, in Germany, to make a musical tour through the United States, and accordingly executed a written agreement for that purpose, on the 10th of October 1843.    That agreement is in the following words:    "Contract between Ole Bull, knight, violin virtuose, Norwegian and Julius Schuberth, music dealer of Hamburgh.    Ole Bull, knight, and Mr. Julius Schuberth, have agreed to an artistical trip to America, and agree as follows:

"1st. The starting place shall be Hamburgh, on the 20th October, via. Amsterdam and Liverpool, to New York.    It is at present determined, that they shall remain in America until the end of April 1844, yet the sooner or later return, shall depend upon circumstances, that is to say, if it is agreeable to the interests of both parties.

"2nd. Mr. J. Schuberth binds himself to arrange the concerts, to direct the same if necessary, and to undertake and attend to the concert accounts.  They shall take place immediately after the concerts, for which he is to receive one-third of the nett proceeds from Mr. Ole Bull, knight, (and if they should in any one concert exceed four thousand francs, he shall receive one-fourth of the nett proceeds.)

"3rd. Mr. Ole Bull undertakes and binds himself, to play at the concerts, arranged by J. Schuberth, and a vacation shall only then take place, when it is agreeable to the interests of both parties.

"4th. Each shall defray his own traveling expenses."

The plaintiff's declaration, filed in the cause, consists of the common counts and a special count, by which it appears, that the suit was brought to recover under the agreement, which purports to be set out in the declaration, one-third of the nett proceeds of the concerts, which took place in Baltimore and Washington.

To the declaration of the plaintiff, the defendant pleaded the general issue.

The plaintiff's evidence, consists of the written agreement and the testimony of a number of witnesses, which is fully detailed in the record.

Bull *vs.* Schuberth.

We shall proceed to consider as briefly as we can, the various questions which are presented by the several exceptions, taken to the ruling of the court below, in their natural order, and not in the irregular manner in which they appear to have been raised in the county court.

The first proposition advanced by the defendant, was, that the contract as proven established a partnership, which precludes an action at law between the parties.

It is conceded, that the fact of the existence or non-existence of a partnership, as between the partners themselves, must be gathered from the intention of the parties, and that the court, in arriving at that intention, must form their conclusions from deductions drawn by analogy from principles of law, applied to the facts and circumstances developed in the case. *Kerr vs. Potter*, 6 *Gill*, 404. It is true, that there are certain expressions employed in the contract, which, standing alone, might indicate a purpose on the part of the contracting parties, to regard this adventure in the light of a partnership transaction. But this inference is rebutted by certain other facts, which conclusively settle, in our judgment, that the parties did not design that the contract should have such an interpretation or effect. In the first place, by the terms of the agreement itself, it is provided, that "Schuberth was to receive one-third of the nett proceeds from Mr. Bull." Now if this was a partnership, each party would have an equal right to claim his respective share of the profits, independent of the other. Instead of this, the relation of principal and agent, is clearly recognised, by requiring the plaintiff to look to Bull, for remuneration for his services. In addition to this, Schuberth, before this suit was brought, and before he could have had any motive in creating such an impression, expressly styles himself, in his correspondence with Ritchings, the *agent* of Bull. Again, Bull, in conversation with the witness, stated that he "*had dismissed Schuberth*, and had employed *another agent*," which manifestly indicated, that he regarded Schuberth only as an *agent or servant*, and as such, could dismiss him at any time.

The mere fact that the remuneration of the plaintiff, was to depend upon the contingent profits of the concerts, does not of itself, create a partnership.    This is not, by any means, an uncommon mode of paying agents and servants, and it is not regarded in the books as necessarily creating a partnership relation between the parties, in the absence of other circumstances, indicating such an intention.

The second prayer presented by the first exception is, "that the plaintiff has offered no evidence, upon which to maintain *any count* of his declaration, there being a variance between the contract declared on, and the contract as offered in evidence."

It has been contended by the plaintiff's counsel, that the question of variance, between the contract proved and the one set out in the special count, is not clearly and distinctly enough presented by the prayer, as required by the act of 1825, chap. 117, inasmuch as the particular variance is not specially defined.

The contract between the parties being in writing, its provisions could only be established by the production of the agreement itself, or proof of its contents in case of its loss or destruction.    When, therefore, a party raises the question of variance, in a case like the present, it necessarily directs the mind of the court to a comparison between the contract as stated in the declaration, and the written agreement offered in proof to support it.    This is all the act of 1825 had in view. In this case there is no room to conjecture, as to what the variance consists.    The question is distinctly presented by the prayer, and we have no difficulty in discovering a manifest and fatal variance.    The special count in purporting to set out the contract, alleges that "said defendant undertook to pay said plaintiff one-third of the nett proceeds of all said concerts, and in all cases where any concert's nett proceeds aforesaid should not amount to or exceed four thousand francs, then the payment aforesaid to the plaintiff should be only one-fourth of the nett proceeds," &c.    On the other hand the agreement offered in evidence shews the contract to be, in this particu-

lar, the very converse of that set out in the declaration. It is in these words: "and if this (the nett proceeds) should in any one concert exceed four thousand francs, he shall receive one-fourth," &c.

If the prayer of the defendant had been confined to the *special count*, this court would have found no difficulty in pronouncing its rejection by the court below, erroneous. But the prayer is general, and asks the court to say that there is no evidence "to maintain *any count* in the declaration." The prayer as thus presented, we think the court were right in rejecting. While there was no evidence to support the *special count*, owing to the variance, we think, under the circumstances of this case, there was evidence which was properly permitted to go to the jury, in support of the common counts. The right of a party to abandon a special contract and resort to an implied agreement, and to recover under the common counts, in a case like the present, depends upon this rule, which is, that if the special agreement has been put an end to by the defendant, or the performance of it on the part of the plaintiff prevented by some act of the defendant; in all such cases the plaintiff may resort to, and recover under the common counts, for whatever may be due for so much of the contract as may have been performed. 7 *Harr. and John.*, 133. In the case we are now reviewing the special agreement has been abandoned, and terminated, and its performance prevented by the defendant. Bull rejects the services of Schuberth, and actually dismisses him, without any default on his part, from his employment, before the contract has been completed. The right, therefore, of the plaintiff to recover the value of any services which he could prove he had rendered by virtue of the agreement, and before he had been dismissed by the defendant, is clear under the common counts. If the services were rendered, and the further requirements of the contract were omitted by Schuberth only, because of the misconduct of the defendant, he should, nevertheless, be entitled to recover for what he had done.

There is no evidence in the case which would have war-

ranted the granting of the third and fourth prayers of the defendant, which related to the forfeiture of the $150, and the right of the defendant to dismiss the plaintiff in consequence thereof; but, on the contrary, all the evidence on that point tends to show, that it was Bull's own neglect or mistake, that led to the breach of his first Baltimore engagement, and to the imposition of the penalty. We think, therefore, these prayers were rightly rejected by the county court.

The second and third exceptions relate to the testimony of Hewitt, which referred to the Washington concerts. While it is quite clear to the mind of the court, that the verdict in this cause embraces the profits of the concerts in Washington, which, manifestly, it ought not to have done under the common counts, upon which it only could have been based, yet the exceptions now before us do not so present the question, as to enable this court to correct the error. Schuberth rendered to the defendant no services at Washington, and therefore he could have properly offered no evidence under the common counts, respecting the profits of those concerts which he might have been entitled to under his agreement. The evidence, however, relating to those profits was introduced without objection, and it would now be too late to attempt to exclude it. Those two exceptions relate to the propriety of two isolated independent questions propounded to the witness, for the purpose of enabling him to fix a certain date. He was asked whether he recollected that an article relating to said concerts appeared in the National Intelligencer, shortly after the concert was given, and whether the article which was produced and shown to the witness, was the same to which he referred? The court, in our judgment, was right in permitting these questions to be asked, if intended to refresh the memory of the witness as to the date of the concert, which was the event to be established. The record does not, however, disclose distinctly for what purpose this evidence was offered, and we think the court was right in not sustaining the defendant's objection to the testimony, because, if for no other reason, the objection came before the paper had been

identified by the witness, or he had an opportunity to do so. 1 *Greenleaf's Evidence, secs.* 436, 437. See, also, 6 *Gill & John.*, 481.

We concur also with the court below in the propriety of refusing to admit the declarations and statements of the defendant, to be given in evidence by the witness Willig, who also was called to show the time when the concerts took place in Washington. The witness was not called to detail, nor was he asked by the plaintiff's counsel to state any part of the conversation which took place, further than that which related to, and tended to show the time of the Washington concerts. It is true, as a general rule, if you offer a part of the declarations and statements of a party against himself, he would have a right to insist, that all he said at the time might go to the jury. But this rule does not apply in the present instance. The plaintiff's purpose was to arrive at the time of a particular fact, and in order to do so, he introduced the conversation of the defendant, so far as it related to that fact, and for no other purpose. Of course all the defendant said upon that point ought to be heard, but it would not be proper to introduce his previous and subsequent conversation and statements with different persons, touching other irrelevant and distinct matters, under the pretext that they were necessary to explain what he had said upon another subject.

Under the fifth and last exception, most of the questions which we have already disposed of, under previous exceptions, seem to have been presented afresh. We shall confine ourselves, in the further review of this exception, to the points not already considered. The prayer that we shall first dispose of, relates to the effect of the supposed *new agreement* entered into between the parties. If there was a new agreement substituted in this case, in place of the original one, it was as much abandoned and terminated by the defendant as was the first agreement, which left the plaintiff equally free to resort to the common counts, to enforce an implied contract for compensation for whatever services he may have rendered prior to the abandonment of the special contract by the de-

fendant. We think, therefore, this prayer was also properly rejected.

The questions embraced in the ninth and eleventh prayers, are the only remaining points to be disposed of, out of the many which were raised by the appellant's counsel. Those questions have reference to the necessity of the plaintiff's showing that he tendered ready to perform his portion of the contract, and that he was prevented from doing so by Bull, or by his orders and directions. This question could only relate to and affect the special count, and as that count is entirely out of view in the present aspect of the case, we feel relieved from the necessity of intimating any opinion upon the prayers in question. But the prayer was properly rejected, because it was too general in its terms, for it made the *tender of readiness* necessary to support all the counts in the declaration, instead of confining it to the special count. We would have no difficulty, however, in deciding that in all cases where the defendant had openly dismissed the plaintiff, and repudiated all connection and intercourse with him, and totally disregarded the contract, there would be no necessity on the part of the plaintiff to make any tender of readiness to perform his portion of the contract, provided he himself had been guilty of no previous default or misconduct.

From the pleadings and proof in this cause, we shall be obliged to pronounce the granting of the appellee's prayer by the county court erroneous, and on that account must reverse the judgment.

Under the peculiar character of this cause, the portion of the proceeds of the several concerts at Baltimore and Washington, which, under the contract, were to belong to Schuberth, could only be recovered under the special count in the declaration, as damages for the breach of the contract. But owing to the variance between the contract declared upon, and the one offered in evidence, as we have already shown, there could be no recovery upon the special count. There could clearly be no recovery of this demand upon a general *indebitatus assumpsit*, for the reasons which we have already

given, namely, because the services to be performed by the plaintiff, were in fact not rendered, nor the work and labor done, which were necessary to constitute such an executed contract, as would entitle the plaintiff to recover upon his common counts. 5 *Harr. & John.*, 47. 6 *Harr. & John.*, 38. The prayer granted by the court affirms, however, the very converse of this proposition. The court say, that, *if before the bringing of the suit the proceeds of the concerts in Baltimore and Washington were paid to Bull, then Schuberth was entitled to recover a proportionate share thereof from Bull, as money had and received to his use.*

In any aspect of this cause, we repeat, this prayer was incorrect. The proceeds of the concerts could not be recovered under the *special count*, because the alleged agreement was not proved. Neither could any part of the proceeds of the Washington concerts be recovered under the *common counts*, because no services were rendered nor acts done by the plaintiff, in relation to those concerts, upon which could be based an implied contract or promise on the part of the defendant to pay him any thing.

We think we have now disposed of all the questions arising in this case, which it is important for us to settle. We affirm the ruling of the county court in relation to the four prayers of the defendant, which are embraced in the first exception; also upon the second, third and fourth exceptions. We also sanction the judgment of the court in rejecting all the defendant's prayers as presented by the fifth exception, but reverse the count for error in granting the appellee or plaintiff's prayer, embraced in the same exception. There appearing to be no exceptions taken to the instructions given by the court in lieu of those asked for by the defendant, we are not required to express any opinion upon those points.

*Judgment reversed and procedendo awarded.*