# M. HERBERT PALMER *v.* A. FREEBORN BROWN
[No. 82, October Term, 1944.]

310

*Decided January 11, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and HENDERSON, JJ.

*J. Wilmer Cronin,* with whom was *D. Eugene Walsh* on the brief, for the appellant.

*Eldridge Hood Young* and *G. Gilbert Cooley,* with whom was *John Wood,* on the brief, for the appellee.

MELVIN, J., delivered the opinion of the Court.

The appellee, a member of the Maryland Bar of long standing, was employed by the appellant to render certain professional services in seeking to recover damages, "or compensation of any kind or character," in connection with appellant's farm in Harford County, Maryland, which was subsequently acquired as a part of the Aberdeen Proving Ground area, a United States Government project. The basis of this employment was a written contract between the parties dated December 4, 1939, which the appellant canceled by his letter to the appellee under date of August 18; 1941. The appellant later received an award for this property of $18,000 as a direct result of condemnation proceedings, and also as an indirect result, the appellee contends, of the preliminary services rendered by him under the contract aforesaid. The appellant refused to recognize any obligation to the appellee, paid him nothing, and was thereupon sued by the

appellee for the value, on a *quantum meruit* basis, of services rendered to the date of the cancellation. The case was submitted to a jury and from the judgment on the verdict in favor of the appellee for $1,200 the present appeal was taken.

The declaration, which was filed in the Circuit Court for Harford County on April 24, 1942, originally contained three counts, the first two being common counts ––(1) for work and labor, and (2) for money had and received––and the third being based on the written contract. Under date of May 11, 1942, the defendant filed the general issue plea to the first and second counts and demurred to the third. According to the docket entries, issue was joined on the plea on May 25, 1942, and on the following December 14th the demurrer was sustained, with leave to amend within five days. The plaintiff (appellee) did not amend and so the case remained at issue as to the first two counts. On November 8, 1943, after the case had been removed to Carroll County for trial, the defendant (appellant) filed a demand for a bill of particulars, without, so far as the record shows, withdrawing his plea, or attempting to obtain leave of Court to do so, and eleven days later the plaintiff complied with this demand. It was not until June 13, 1944, that the next docket entry appears. The defendant then filed general issue pleas to the first and second counts of the narr, and on the next day the plaintiff entered a motion *ne recipiatur* to the pleas, which was granted by the Court. To the ruling on this motion the defendant excepted, being exception number one on this appeal. No authorities are cited in support of this point, and, we take it, none can be found, for it is an elementary rule of pleading that after pleas have been filed and issue joined a demand for a bill of particulars comes too late. *Poe's Pleading and Practice,* 5th Ed. Vol. 2 Sec. 120; *Southern Bldg. Ass'n v. Price,* 88 Md. 155, 41 A. 53; *White Automobile Co. v. Dorsey,* 119 Md. 251, 86 A. 617. The Court was, therefore, correct in refusing to receive defendant's pleas filed after issue had been joined, and this ruling

had the legal effect of striking out, also, both the demand for particulars and the bill itself, as petitioned by the plaintiff when he filed his motion *ne recipiatur*. When the case proceeded to trial the right of recovery was based on the common counts only—the special count reciting the written contract having been eliminated at the instance of the defendant—so that the bill of particulars which elaborated on this contract was obviously out of order and the plaintiff, then suing for damages on a *quantum meruit* basis, could not be charged with adherence to particulars furnished in connection with a discarded theory. As expressed in *Poe's Practice,* supra, Sec. 118:

"If improperly called for and improvidently furnished they (bills of particulars) have no effect, and the right of the parties, furnishing them to recover without reference to them is well established."

The sole issue on this appeal is, therefore, the one raised by the common counts, and, simply stated, is this:

Is the appellee entitled to recover in general assumpsit for services actually rendered in part performance of a special contract which was canceled by the appellant?

The plain answer to that inquiry is to be found in the language of this Court in the early case of *Bull v. Schuberth,* 2 Md. 38, 57, as follows:

"If the special agreement has been put an end to by the defendant, or the performance of it on the part of the plaintiff prevented by some act of the defendant; in all such cases the plaintiff may resort to recovery under the common counts for whatever may be due for so much of the contract as may have been performed."

The law on this point has become still further established by later cases dealing directly with it. *Western Union Tel. Co. v. Semmes,* 73 Md. 9, 21, 20 A. 127, and *Boyd v. Johnson,* 145 Md. 385, 389, 390, 125 A. 697.

In commenting on the case of *Bull v. Schuberth,* supra, and earlier cases along the same line, Judge Bryan, in the *Semmes* case, supra, said:

"These cases are supported by a vast amount of authority, and they announce a doctrine eminently just and reasonable."

It is unnecessary to elaborate on this, for it must be conceded to be still the law, and, moreover, applicable to the case at bar.

The background of the contractual relations between the appellee and the appellant is made up of a series of efforts by the latter to obtain some relief from the conditions imposed upon him and his neighborhood by the establishment in that section of Harford County of the Government "Proving Ground," comprising some 33,000 acres. According to the record, as far back as 1932 a claim had been filed in the United States Court of Claims for damages to this farm, the title to which was then in the name of appellant's wife, Helen H. Palmer. The amount of this claim was $4,000, but the efforts to collect it, or any part of it, were unsuccessful. Eventually, one of the neighbors and farm owners, Mr. Harry C. Holloway, became interested in promoting the claims of those who, like himself, had sustained damages in that same connection, and employed the appellee, A Freeborn Brown, Esq., of Havre de Grace, as his attorney. Contracts of employment were drawn up and Mr. Holloway solicited some of his neighbors, including the appellant, to execute them so as to pool their interests as claimants under the guidance of the same attorney, the appellee. The appellant finally executed the contract of employment with the appellee as presented to him by Mr. Holloway and this paper was filed as an exhibit in the instant case. When this contract was delivered to Mr. Brown by Mr. Holloway there was attached to it a letter or memorandum which was also admitted in evidence, as being in the handwriting of the appellant himself, entitled "Complaint of M. H. Palmer v. Government Proving Ground." Therein was described his version of the more or less disastrous effect he claimed the establishing of this project had on the value of his farm. After recounting the various stages in the depreciation and the

causes thereof, such as being isolated in a "pocket" without public utilities or adequate roads, and then the dropping of shells from airplanes, and the causing of property damage in other ways, he concluded his memorandum with the statement that his farm had become no longer a desirable place in which to live, so that he could not expect to get over one half of the $15,000 figure which he claimed he was once offered for the property.

, This paper was admittedly signed by the appellant and was his own statement of the condition and probable value of his farm at the time he employed appellee as his attorney in December, 1939. The scope of the employment, as set out in the written contract, was that the appellee, either himself or through associate attorneys of his own choosing, was to institute and conduct "such litigation against the United States as may be necessary presently or hereafter to recover all damages or compensation of any kind or character heretofore or hereafter accruing to said parties of the first part (appellant) because, or as a direct or indirect result, of the establishment by the United States Government of the Aberdeen Proving Ground in the County of Harford, State of Maryland."

The appellee accepted this employment and in pursuance thereof, according to his testimony—corroborated in all substantial respects by that of Mr. Holloway—rendered services to the appellant and his other clients, which included many interviews with Army Officers and Government Officials, and the preparation of data, maps, etc., to support the claims which appellee represented. Altogether, he testified, he made thirty-six trips to Washington subsequent to the date of his contract with appellant, these trips being "on behalf of presenting the claim of Mr. Palmer for damages against the United States Government." Besides these trips, the appellee testified, that from December, 1939, to August, 1941, he put in twenty-five days in his office and also made two trips to the Aberdeen Proving Ground in the appellant's behalf.

The record further shows that on July 30, 1941, the appellant was approached by a representative of the United States Government about acquiring his farm as a part of a 5,000-acre addition to the Proving Ground, and that on August 18, 1941, the appellant wrote the appellee the following letter:

"On receipt of this letter you may consider our contract of employment for claims against the United States Government resulting from the establishment and operation of Aberdeen Proving Ground canceled."

To this letter, the appellee made reply under date of August 20, 1941, as follows:

"On my return to my office this morning I found your letter of the 18th, informing me that I may consider your contract of employment dated December 4th, 1939, for your claim against the United States Government for damages that you sustained depreciating the value of your real estate, etc., canceled, and in reply would say that I will not relieve you from the responsibility of your contract, for I have, and am, faithfully performing my part of the contract, and assuming that you entered into the contract in good faith, will expect you to fully perform your part of the contract."

Thereafter, as of September 13, 1941, the United States Government acquired the appellant's farm, the amount of the award having been agreed upon by the respective parties. This amount was $18,000. In this connection it is relevant to note appellee's testimony as to the amount of total compensation he had aimed to get for the appellant, based on the valuations which the latter had given him about the time of the contract of employment. That part of his testimony appears in the record as follows:

"That the first message from Mr. Palmer was that he could not get over $5,000 for the farm, but when he wrote in the statement he made it $7,500, but his damages to the farm ran about $13,000—I was aiming to get him about $18,000, including the price of the damages."

The appellant, while admitting the execution of the contract of employment with the appellee, insists that nothing was earned under it because the appellee did not institute any litigation and produced no results from the date of the contract on December 4, 1939, to the time of its cancelation on August 18, 1941. In his own testimony he attempted to give some reasons for sending the letter of cancelation, but it is not necessary to comment on these because the very fact of the cancelation speaks for itself. The appellant also complains, as a part of his defense to the present suit, that the appellee "has done nothing further in the prosecution of his (appellant's) claim since August 20th, 1941." In fact, this defense was made a basis for exception to the Court's charge to the jury. In so doing, the appellant has taken the novel position of canceling his contract of employment with the appellee, thereby destroying the attorney-client relationship, and at the same time resisting recovery on the ground that the attorney had ceased to render any services after he had been discharged. Such a defense is, at least, unmeritorious and the trial judge was clearly right in rejecting it.

It may be conceded that the appellant had the right to terminate the contract of employment and to effect a settlement of his claim without his former attorney's intervention, knowledge or consent *(Boyd v. Johnson,* supra*),* but it is equally well settled that for services rendered in good faith in part performance of the canceled contract the attorney may recover under the common counts "for whatever may be due for so much of the contract as may have been performed." *Bull v. Schuberth,* supra.

The law governing this point, which is the only one at issue in the case, is simple and clear and was correctly stated by the trial judge in his charge to the jury. The exceptions to it, combined in the record as exception No. 30, were, therefore, properly overruled. This likewise applies to appellant's motion for a directed verdict.

Besides exceptions No. 1 and No. 30, hereinbefore mentioned, there were 28 other exceptions taken by ap-

pellant during the course of the trial, these being to rulings on the evidence. A careful consideration of these exceptions shows that they were mostly based on the mistaken theory that the plaintiff (appellee) could only recover under the provisions of the special contract and the bill of particulars. Inasmuch, however, as this special count had been stricken from the case and the plaintiff's recovery confined to the *quantum meruit* theory, testimony as to the character and extent of the services rendered by him, and the reasonable value thereof, were not only admissible but were essential to his case. We do not deem it necessary or appropriate to comment on these exceptions in detail, for they raise no point of law which requires restatement or elaboration. It is sufficient to say that we find no error in any of the rulings.

*Judgment affimed, with costs.*