894 F.2d 402
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J & J CONTRACTING, INC., Plaintiff-Appellee,
v.
The SHERMAN R. SMOOT COMPANY, Defendant-Appellant.
J & J CONTRACTING, INC., Plaintiff-Appellant,
v.
The SHERMAN R. SMOOT COMPANY, Defendant-Appellee.
 Nos. 89-3212, 89-3238.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 1, 1989.
Decided: Jan. 10, 1990.
 
 Judd L. Kessler (John Hardin Young, Porter, Wright, Morris & Arthur, on brief), for appellant.
 Jay Barry Shuster (Arnold B. Silbiger, on brief), for appellee.
 Before K.K. HALL and CHAPMAN, Circuit Judges, and HARRISON L. WINTER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This appeal and cross-appeal follow a nonjury trial and arise out of a contractual dispute between appellant/cross-appellee Sherman R. Smoot Company ("Smoot") and appellee/cross-appellant J & J Contracting, Inc. ("J & J"). Smoot appeals the district court's finding that J & J is entitled to damages under quantum meruit. J & J appeals the district court's use of a contractual provision to determine the amount of quantum meruit damages as well as its denial of attorney's fees. After oral arguments and a careful review of the briefs and record, we find no error and affirm.
 
 
 2
 * In furtherance of its contract to provide masonry work for the Peter Kiewit Construction Company, which was the general contractor for the Harbor Court project in Baltimore, Maryland, Smoot entered into a subcontract with J & J on October 22, 1984, whereby J & J promised to furnish eight electrically-powered scaffolds ("machines"), tower sections and accompanying materials and services from November 1, 1984, through August 31, 1985. In return, Smoot promised to pay a base fee of $100,000 plus 50% of any savings that would result if final expenditures in certain categories did not exceed $1,275,000, and promised to "man the job to the maximum," which was understood to mean the employment of four masons and one tender for each machine.
 
 
 3
 After the machines were delivered about two weeks late, Smoot encountered difficulties hiring sufficient masons for the operation of the machines. J & J immediately and continually complained that an inadequate number of masons would prevent any cost savings, but it remained on the job. Smoot claims that it had trouble operating the machines, because of electrical difficulties, loading problems and jamming, and that this put Smoot behind schedule. However, J & J asserts that the delays resulted from Smoot's failure to properly man the machines.
 
 
 4
 On May 9, 1985, Smoot requested removal of the machines, thereby repudiating the contract almost four months before its termination date. J & J removed the machines by June 15, 1985. As the parties have stipulated that no claim is made for the period after removal, J & J's claim concerns only the period during which the machines were used: November 7, 1984, to June 15, 1985.
 
 
 5
 Upon J & J's request for an accounting of costs, Smoot replied that it had incurred large losses, not savings, thus precluding any additional income to J & J under the contract. Dissatisfied with this accounting, J & J filed suit on July 15, 1986, demanding its share of the savings under the contract. When J & J realized that there were, in fact, no savings, it changed the claim to one for quantum meruit, requesting the fair market value of the rental of the machines and towers.
 
 
 6
 The district court held that J & J was not entitled to recovery on the contract, because the evidence of damages was too speculative, but it awarded $40,000 in damages under quantum meruit, finding that "[s]ince defendant Smoot terminated its agreement with J & J Contracting, [J & J] has the right to recover in restitution for the services it rendered to Smoot in part performance of the contract;" Smoot appeals this ruling, arguing the quantum meruit is, as a matter of law, unavailable to J & J. The court based the amount of damages on a contract provision setting the rental cost of any machines needed beyond the term of the contract; J & J appeals this ruling, arguing that the court should have measured the fair market value of the machines by reference to J & J's other rental agreements. Finally, J & J contests the court's denial of attorney's fees.
 
 II
 
 7
 In appealing the district court's use of quantum meruit, Smoot argues that the district court's reliance on United States v. Algernon Blair, Inc., 479 F.2d 638 (4th Cir.1973), was mistaken, because, under Lazorcak v. Feuerstein, 273 Md. 69, 327 A.2d 477 (1974), J & J, at the time of Smoot's breach, had the option of either affirming the contract and seeking contractual damages or specific performance, or repudiating the contract and requesting rescission, but not both. Smoot claims that J & J forfeited any right to quantum meruit, because it continued performance notwithstanding Smoot's breach, i.e., Smoot's failure to employ the contractually required number of workers on each machine. Alternatively, Smoot argues that J & J waived its right to equitable relief by continuing to perform in spite of a justifiable excuse to terminate the contract because of Smoot's breach.
 
 
 8
 We find these arguments unavailing, primarily because Smoot misreads the basis of the district court's decision. The district court awarded quantum meruit damages also because Smoot breached the contract by terminating it before J & J had completed performance, not simply because Smoot failed to man the machines properly. Given the court's reliance on this later breach, Smoot's arguments and case law are inapposite. Instead, as the district court held, J & J is entitled to recover quantum meruit damages for "services actually rendered in part performance of a special contract which was cancelled" by Smoot. Palmer v. Brown, 184 Md. 309, 312, 40 A.2d 514, 515 (1945). We find that quantum meruit is appropriate under the parties' "savings" contract because J & J complied with the contract but was denied its anticipated profit from the "savings" as a result of Smoot's failure to "man the job to the maximum." Thus, the district court did not err in awarding J & J damages based on quantum meruit.
 
 
 9
 J & J appeals the district court's use of the contract provision for an additional monthly charge for the use of any machines beyond the contract termination date. J & J argues that this charge neither represents the fair market value of the machines nor includes the accompanying package of equipment and services. J & J fails to explain why the district court acted unreasonably in using this evidence of value, and we find no error in the district court's reliance on the provision.
 
 
 10
 Finally, J & J appeals the district court's denial of attorney's fees, arguing that the parties' contract incorporates the standardized rental agreements, under which Smoot is required to pay attorney's fees if J & J brings suit to collect on any account. The district court, however, held that the rental agreements do not form part of the contract in this case and declined to award fees to J & J. We find no error in this holding.
 
 
 11
 For the above reasons, the district court is
 
 
 12
 AFFIRMED.