CHRISTOPHER RODEMER, *vs.* JOSEPH GONDER, HENRY HAZLEHURST, & Co.—*December* 1850.

The plaintiff made a contract with defendants for grading a section of rail road, to be completed by the 1st of October, 1845. By this contract monthly estimates were to be made by the defendant's agent, of the quantity and value of the work done during the month, *four-fifths* of which value was to be paid to the plaintiff immediately, and the balance on completion of the work, said estimates to be conclusive between the parties. If the plaintiff failed to comply with all its terms, or if it should appear to their agent that the work does not progress with sufficient speed, the defendants may annul the contract, upon giving to the plaintiff *three days'* *notice* in writing to that effect, in which case the plaintiff was to forfeit the unpaid value of the work done. This right to annul was not to be *mutual*, but to be exercised by defendants only. Estimates and payments abating the one-fifth were made up to the 29th of October, 1845, and the work was prosecuted by plaintiff until the 6th of November following, when defendants, *without notice*, entered upon and expelled the plaintiff from the work. HELD :

That by this act the defendants annulled the contract, and thereby released the plaintiff, and he may sue in general *assumpsit* for the value of the work actually done, and is not bound to resort to his special action on the contract.

Where there is a special contract and the plaintiff has performed a part of it according to its terms, and is prevented by the act or consent of the defendant from performing the residue, he may recover in general *assumpsit* for the work actually done, and the defendant cannot set up the special contract to defeat him.

Putting an end to a contract by one party is an abandonment of it by him, and if his acts in so doing are such as necessarily to prevent a performance on the part of the other, the whole contract is rescinded, and the other party may resort to his *quantum meruit.*

Where a contract contains a number of distinct stipulations, which admit of being separately executed and closed each is taken distributively, and considered as forming the matter of a separate agreement after it is so closed.

In this case the plaintiff is concluded by the monthly settlements, and by reason of their being closed as distinct and separate portions of the contract, he cannot open them again to prove and recover the actual value of the work.

These partial payments bind him to the whole settlement, and so far as the work has been adjusted under the contract he can recover only the balance due upon the basis of these settlements, including the one-fifth reserved for ulterior settlement.

The defendants by their own acts depriving the plaintiff of the means and opportunity to comply with his contract, have released all claim to the forfeiture mentioned in the agreement.

So far as work has been performed which remains unadjusted between the parties by the monthly estimates, the plaintiff is not bound by the contract, but is at large upon his *quantum meruit* and may prove the actual value of the work.

The stipulation in this contract that the right to annul it is not mutual, means that the defendants may, in any state of things, hold the plaintiff to his contract, while for causes alleged they are free to break it; but it further means that if they exercise this privilege it *is then broken*, because once repudiated by the defendant it cannot bind the plaintiff.

APPEAL from *Allegany* county court.

The appellant (the plaintiff below,) made a contract with the appellees (the defendants below,) for grading a section of railroad. The terms of the contract are sufficiently stated in the opinion of this court. The defendants having in the manner stated in the opinion prevented the plaintiff from prosecuting the work, the latter brought his action of *assumpsit* for the value of the work done. The declaration contains counts for work and labor, and materials furnished, and the common money counts. Pleas, *non assumpsit*, payment, and set off.

1st and 2nd EXCEPTIONS. The plaintiff having offered evidence of the quantity, character and value of the work done, proposed to ask a witness whether there was any place at the work or on the section, where laborers could be boarded, at the time the plaintiff commenced work, and whether he was not obliged to put up houses or shantees in which the hands might be boarded, and whether or not from these facts, and the situation

of the section on the mountain, the value of the work done was enhanced? To these questions defendants objected as not relevant to the issues, and the court (*Marshall and Weisel A. J.,*) being of that opinion, would not permit them to be asked, and the plaintiff excepted.

3RD EXCEPTION. The defendants then offered in evidence the special agreement referred to, and proved that the work, of which the plaintiff had given evidence was all done under said contract: that monthly estimates of the work and payments upon it were made according to the terms of the agreement, up to the 29th of October, 1845; that on the 6th of the following month defendants entered on the work, and gave notice to the laborers that they intended thenceforth to conduct the work in their own names, which they accordingly did, the plaintiff leaving the work after protesting against this interference. Defendants then asked the two instructions set out in the opinion, both of which the court granted, and plaintiff excepted.

4TH EXCEPTION. Was taken by the plaintiff to a refusal of the instruction, that if defendants wrongfully took possession of the work and expelled the plaintiff therefrom on the 6th of November, 1845, and by their acts on that day annulled the the contract, the plaintiff can recover in this action.

5TH EXCEPTION. This was taken by the plaintiff to the rejection of his prayer, that if the agent of the company did not make, or intend to make, the monthly estimates referred to in the agreement accurate, but only approximate, then said estimates are not final and conclusive on the plaintiff, but he may show from other testimony the true amount of the work done up to the 6th of November, 1845.

The verdict and judgment was for the defendants and the plaintiff appealed.

The cause was argued before SPENCE, MAGRUDER, and FRICK, J.

. By McKAIG for the appellant, and
By GEORGE W. PEARRE for the appellees.

The several bills of exception and prayers indicate the points urged in argument.

FRICK, J., delivered the opinion of this court.

On the 14th of April, 1845, the plaintiff entered into a contract with the defendants for graduating a section of rail road, at certain stipulated prices for the several kinds of work to be done, engaging to complete it on or before the 1st day of October of the same year.

In the contract is a stipulation, that during the progress of the work and until it is completed, there shall be a monthly estimate made by the agent of the defendants of the quantity, character and value of the work done during the month, *four-fifths* of which value shall be paid to the plaintiff at the office of the defendants in the town of *Cumberland,* and when the work is completed and accepted by the agents of the company, there shall be a final estimate, when the value appearing to be due to the plaintiff, shall be paid; the said monthly estimates to be taken as conclusive between the parties.

The work was commenced by the plaintiff in fulfilment of the contract, and it is in evidence that during the progress of it, monthly estimates as provided were regularly made from actual measurements by the agent of the company, and the plaintiff regularly appeared at the office of the defendants, and received the payments from them under, and with reference to, said estimates, abating the twenty per cent., which was reserved for the final completion of the work. The payments were made to the plaintiff up to the 29th of October 1845, and the work was prosecuted by him until the 6th of November following, when the defendants entered upon the work, and gave notice to the superintendents and laborers engaged upon it, that they intended thenceforth to conduct the work in their own names, and pay the persons so employed upon it themselves. The workmen thereupon suspended work under the plaintiff and accepted service with the defendants, who sent an agent of their own appointment upon the premises to take charge of the work, and the plaintiff protesting to this agent against this for-

cible act of the company, abandoned the work ; and after that day it was conducted and completed by the defendants. This right to rescind the contract and discharge the plaintiff from the work, the defendants claim under the further stipulation in the contract; that in case the plaintiff should not from time to time fully comply with all the terms of the contract, or if it should appear to their agent that the work does not progress with sufficient speed, or in the case of interference with the work by legal proceedings, the defendants should have power to annul the contract upon giving to the plaintiff *three days' notice*, in writing to that effect, in which case the unpaid value of the work done shall be forfeited by the plaintiff. And this right to annul is further declared to be *not mutual*, but to be exercised only by the defendants.

Hereupon the plaintiff has instituted this action for work and labor done and materials found. The declaration contains the usual common counts, and at the trial of the cause he offered evidence of the value of the work done, upon which value he claimed to recover.

The defendants to repel their claim offered in evidence the special agreement, insisting that the plaintiff having excluded himself from the right to rescind the contract, his remedy for any breach on the part of the defendants, was by an action on the contract, and not upon the general counts; at all events, that he cannot recover in this form, but for the balances, if any remaining due to him under the monthly estimates during the progress of the work done by him, exclusive of the twenty per cent. of said estimates retained by the defendants.

We are to inquire whether the acts of the defendants in the premises discharged the plaintiff from his obligations under it, and if so, whether he can maintain his action in this form?

By the peculiar and one sided character of this contract, the right to rescind it is reserved to one party alone. That right however, is not open to a capricious exercise of it, but the contract expressly specifies the grounds upon which alone he is at liberty to abandon it. Without again recurring to them or searching for the reasons that prompted the acts by

which the plaintiff was driven from the work, it is enough to know that the defendants failed to give the stipulated notice in writing, and without any cause assigned, entered upon the work and expelled the plaintiff. The only imaginable pretext that the record would justify, is that the plaintiff failed in the time to which he was restricted and thus offered a legal justification for the acts of the defendants. But no such pretext is alleged. On the contrary the work was continued by the plaintiff, and payments made after the 1st of October, and the question would still be open before the jury, whether by continuing to operate upon the work under the contract, and under the supervision of the plaintiff's agents, this actual breach of the contract had not been waived by the defendants?

It is not however material to inquire whether the defendants rescinded the contract upon any of the grounds that authorized it. They failed to give the notice to which the plaintiff was entitled. They broke the contract by a forcible entry upon the works without cause shown to the plaintiff, and in either case repudiated and annulled the contract by their own mere act of volition. Is the plaintiff then further bound by its stipulation or is he not also at liberty to abandon it? Though one party alone has reserved the right to arrest the work, when he does so and excludes the other by force from further compliance, is it too much to say that he is discharged from all further obligation under it, and may treat it as a mutual abandonment? If one party rescinds the contract, how can it be said to subsist as regards the other? The stipulation that the right to annul is not mutual, must mean that the defendant in any state of things, however disadvantageous, may hold the plaintiff to his contract, while for causes alleged the defendant is free to break it. But it certainly means further, that if the defendant exercises his privileges, *it is then broken.* Because once repudiated by the defendant, it cannot bind one and not the other. And the party thus injured by the abandonment of the contract is not bound to resort to his special action, but may rely upon the implied legal liability of the other to compensate the services rendered, and may claim the adjustment in *inde-*

*bitatus assumpsit* upon the basis of the work which he has actually performed. To defeat this, the defendant cannot be allowed to set up the special contract, which he was the first to violate and abandon. It would be manifestly unjust to allow him to do so, nor is it sanctioned by any principle of law or of pleading.

"Where there is a special contract, and the plaintiff has performed a part of it according to its terms, and has been prevented by the act or consent of the defendant from performing the residue, he may in general *assumpsit* recover for the work actually performed, and the defendant cannot set up the special contract to defeat him," *Smith's Leading Cases*, 44 *Law Lib.*, 25, and cases cited in note 4.

All the authorities agree that by putting an end to the contract by one party, it must be considered as abandoned by him and if his acts in so doing are such as necessarily to prevent a performance on the part of the other, the whole contract must be considered as rescinded, and the other party may resort to his *quantum meruit*.

The question now is, what is the effect of this doctrine upon the particular contract now before the court, and what is the measure of indemnity by which the plaintiff is to recover? He has received payments or at least adjusted monthly accounts upon the basis of settlement prescribed by the contract. Are these adjustments obligatory upon him, or is the contract open in its entirety to claim, as he does here, the fair and full value of his work, independant of the prices regulated by the contract?

It would seem that where the agreement contains a number of distinct stipulations, which admit of being separately executed and closed, each is taken distributively and considered as forming the matter of a separate agreement after it is so closed. See *Smith's Leading Cases* above, and the case there cited, *Sickles vs. Pattison*, 14 *Wend.*, 257.

By the contract before us, payments are to be made at stipulated periods according to the amount of work performed. The plaintiff was not required to perform any given amount

of work in each month, but whatever was performed by him, was to be measured and estimated by the prices fixed and closed by a payment to the plaintiff. It is true that twenty per cent. is reserved in the hands of the defendants, dependent upon the conditions in the contract, looking to the completion of the work. But that reservation can in no wise affect the principle of adjustment adopted by the parties themselves. The contract being in its terms divisible, and the consideration likewise, it is obvious that a separate *assumpsit* arises, and an action could be sustained at each of these monthly periods respectively, upon the adjustments of the work done and the estimate of the agent of the defendant's excluding the twenty per cent. reserved for ulterior settlement. But when the contract is annulled and the plaintiff is excluded from the performance, the amount so reserved becomes part of the arrears of the monthly payments to which he is as much entitled as if he had been permitted to complete the contract. It is released from the conditions under which it was retained by the act of the defendants themselves, and forms part of the amount which the plaintiff has earned under the monthly estimates made by the agent of the company. And upon the action of *indebitatus assumpsit* which arises to the plaintiff by the defendant's breach of the contract, the plaintiff is entitled to include it as an amount expressly admitted to be due to him, upon adjustment of the monthly accounts. He is concluded by these settlements, and by reason of their being closed as distinct and separate portions of the contract, he cannot open them again to prove and recover the actual value of his work. His claim has in fact been liquidated upon the quantity of work done and the value ascertained by the prices in the contract, and he is effectually barred by adopting the adjustments and receiving payments under them. The partial payments bind him to the whole settlement. And so far as the work has been ascertained and adjusted under the contract, he is entitled to recover only the balance upon the basis of these settlements, whatever may remain in arrear including the twenty per cent. For by the defendant's own proceeding he has released all claim to this forfeiture, as by his act the

plaintiff was deprived of the means and opportunity to comply with his contract, and this twenty per cent., thus becomes part of the money earned by the plaintiff under it.

This is the rational and legal interpretation of these adjustments. So far however, as work has been performed that remains unadjusted between the parties, the plaintiff is at large upon his *quantum meruit*, and is at liberty to prove the actual value of such work. Here the rates of compensation stipulated by the contract are no longer binding upon the parties. They constitute but an element in the proof, proper to go to the jury as *prima facie* evidence of value, leaving it still open to the parties to show how this average standard of prices agreed on, ought to be more or less, according to the difficulties and value of this particular portion of the work, in comparison with the other portions. In relation to this part of the case, they are not to be considered as arbitrary or conclusive. *Smith's Leading Cases*, 44 *Law Lib.*, 30.

With these principles controlling the case, we proceed briefly to apply them to the respective prayers submitted by the parties.

Upon the 1st and 2d prayers of the plaintiff, we think the evidence of *Jeanpierre* was improperly excluded by the court. The plaintiff had proved by a competent witness the value of the work, from an estimate and calculation of his own, independent of the prices fixed by the contract; and then offered to prove, that from the inaccessible character of the country, and the want of accommodation for laborers, the work involved preparatory labor and additional difficulties, which necessarily enhanced the value of the work done by the plaintiff; and we can see no good reason for rejecting it. It was a fair and proper subject of consideration before the jury, in this form of action, and the character of the evidence seems to us, sufficiently apparent on the face of the prayer, without further explanation of its object and tendency. It was intended to present to the jury, the particular difficulties that increased the labour and enhanced the value of the work. The special agreement had not then been produced, and the views here taken under the adjustment, were not in the way of the evidence as offered. And

so far as it applies to the unadjusted portion of the work, it must still be considered good and competent evidence. What particular weight it may be entitled to before a jury, we are not to say. We think it was legitimate evidence, and as such, ought to have been submitted to them.

The defendants then having offered in evidence the special agreement, and proved by the agent of the company, that the monthly estimates were made by him, from actual measurements by himself and his assistant, and that upon all the estimates, payments had been received by the plaintiff; the plaintiff proved, that on the 6th day of November, the defendants entered upon the works, and without notice or reason assigned, assumed the direction of them, and refused to allow the plaintiff to proceed. And the defendants hereupon, prayed the instruction of the court:

1st. That the plaintiff cannot recover under this declaration for said work and labor, except for the balances, if any, remaining due under the monthly estimates, made by the agent during the progress of the work, *exclusive* of the twenty per cent. of said estimates, retained by the defendants; and

2d. That by the terms of the contract, the plaintiff deprived himself of the right to rescind the same, and that his remedy for any breach of it, is by suit upon the contract; and that he cannot recover under this declaration for any work or labor, or other service performed, without showing an annulment of it, by the express agreement of both parties, which instructions the court gave to the jury.

It has been already said, that under the circumstances, and in this form, the plaintiff may not only recover the balances due on the monthly statements of the work adjusted, as well as the value of the work unadjusted, but also the twenty per cent. retained in the hands of the defendants; the first prayer of the defendants ought, therefore, to have been rejected. We have also said, that the defendants having rescinded the contract by their own act of force, and without notice, the right to sue in this form, was open to the plaintiff; because by this unlawful exercise of the right reserved to them, the contract was at an

38    v.9

end, and there could be no necessity to show an express agreement of the one, to ratify the wrongful act of the other party. It is enough, that the plaintiff was not notified or consulted, and that the defendants terminated the contract by their own arbitrary and capricious action, and left the plaintiff no other alternative, than to acquiesce and seek his remedy at law. There is, therefore, error in both these instructions of the court.

The third instruction asked by the plaintiff, relates to the form of action, resulting from the expulsion of the plaintiff from the work, and the wrongful possession by the defendant, which we have before determined was under the facts in the cause, properly an action for work and labor, &c., and consequently, the court erred here, also, in refusing to grant it.

The fourth instruction asked by the plaintiff, was to reject the monthly estimates, as not final and conclusive; because the *measurements* were not actually made by the agent, and because he did not intend to make these monthly estimates accurate; which the court properly refused; because there is no evidence, that he did not intend them to be accurate. On the contrary as proved by him, they were made from actual measurements, which were returned to the office of the defendants, and the plaintiff regularly appeared there and received the payments under, and with reference to these estimates.

The judgment must be reversed, and the cause returned to the county court.

JUDGMENT REVERSED, AND
PROCEDENDO AWARDED.