STEWARD VILLAGE SHOPPING CENTER, LIMITED PARTNERSHIP *v.* MELBOURNE, Indiv. & t/a P. G. Melbourne Real Estate, Inc.

[No. 95, September Term, 1974.]

*Decided February 24, 1975.*

The cause was submitted on briefs to SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

Submitted by *Barry H. Helfand* for appellant.

Submitted by *Audrey E. Melbourne, Alfred S. Fried, Howard E. Goldman* and *Robert H. Rosenbaum* for appellee.

LEVINE, J., delivered the opinion of the Court.

This case presents yet another dispute between a real estate broker and a property owner resulting from a claim for payment of a commission. Unlike the more typical case, however, here the broker claims to have produced a tenant rather than a purchaser. The appeal is from a judgment of $5,700 awarded by a jury in the Circuit Court for Prince George's County (Bowie, J.) to appellee, Melbourne Real

Estate, Inc. (the broker), against appellant, Steward Village Shopping Center Limited Partnership (the owner). We affirm.

Early in January 1973, Robert D. Lucian (Lucian), a licensed real estate salesman employed by the broker, while driving by the owner's shopping center located on Maryland Route 198 between the City of Laurel and the Anne Arundel County line, observed a sign in one of the windows advertising commercial space for lease. He placed a telephone call to the number which appeared thereon, and spoke to a Mr. Joseph Della Ratta (Della Ratta), a principal in the limited partnership which owned the property. He testified that when he asked whether he could act as a leasing agent for the vacant property, Della Ratta replied that although it was his practice to refrain from entering into exclusive listings with real estate companies, he did occasionally "cooperate on a commission basis." In any event, Della Ratta arranged for the keys to be available at a nearby dental office and authorized Lucian to pick them up and show the premises to prospective tenants. He proceeded to do so.

Among the several prospects to whom Lucian showed the premises were the representatives of a retail concern from Massachusetts known as the Clothes Corner, Inc. This visit occurred on January 22 or 23, following another telephone conversation between Lucian and Della Ratta in which the latter again declined to enter into a written listing but authorized the broker to "show the property."

After showing the premises to the representatives of the Clothes Corner, Inc., Lucian reported to Della Ratta that they were interested, and then obtained from the owner's office the lease form which it desired to use for this shopping center. Shortly thereafter, Lucian received a request from the Clothes Corner, Inc. to arrange a meeting between its Massachusetts attorney and Della Ratta. Arrangements to hold such a meeting on February 7, 1973, were made by Lucian, and the conference, with the latter in attendance, took place in Della Ratta's office on that day or the day after.

Following the negotiations which ensued at the meeting of February 7 or 8, Lucian asked Della Ratta privately whether "there would be a clause in the lease for a commission." The latter said "no, that we would probably try to arrange a finder's fee." In prior conversations, according to Lucian, he had been assured by Della Ratta that he would be paid a commission if the broker produced a tenant.

Following the negotiations in Della Ratta's office, the visitors from Massachusetts and Lucian repaired to the office of the broker's attorney where a proposed lease was typed. As drafted, that instrument provided for the payment of a five percent commission to the broker based on the rent paid during the original lease term and any renewal thereof. Della Ratta deleted that provision when the draft was presented to him and, at the request of the Massachusetts attorney, who apparently sensed a portent of what was to come, inserted a provision relieving the tenant of any responsibility for a real estate commission.

With these changes having been effected, the owner entered into a lease with a newly formed subsidiary of the Massachusetts corporation. The lease provided for an original term of three years at a minimum rental of $17,600 a year, and for two renewal options of five years' each at the same rent plus allowances for increases in the cost of living. Although of no consequence here, the lease also provided for additional rent payments beyond the minimum sum based upon a percentage of gross sales. Immediately upon learning of the lease, Lucian inquired of Della Ratta concerning the commission, and was told by the latter that he recalled no written agreement to that effect.

In regard to the amount of the commission, Lucian testified on behalf of the broker that the usual real estate commission in a lease of this nature is five percent of the "gross amount of the lease." This, he said, meant $11,440 in this case because the minimum rent for the 13-year period totaled $228,800. An independent expert witness produced by the broker corroborated this testimony. Additionally, the same witness testified that usually such commissions were paid annually not only upon the minimum rent, but also on

the percentage of gross sales during the initial term and any renewals thereof. There was expert testimony presented by the owner that commissions ranged up to six percent in such situations. This expert witness also testified that where payment of the commission is made in a "lump-sum" at the outset, it is customary for the broker to receive one-half of the amount which he would ordinarily be paid.

With respect to the commission, Della Ratta stated that had Lucian in fact called, he would have advised him that the owner would pay a commission of only two percent to a broker who handled all negotiations, prepared a written lease and submitted it to the owner; otherwise, it would pay a finder's fee of only one percent. This is what he claimed to have related to Lucian at the conclusion of the February 7 meeting. Thus, he had deleted the provision for a commission for that reason when the proposed lease had been submitted to him later that day.

On this appeal, the owner does not challenge the jury determination that the broker was the procuring cause of the lease entered into here, and that it, therefore, became entitled to a commission. Instead, because it is obviously provoked at the size of the commission awarded by the jury, the owner advances these contentions:

(1) That the trial court erred in denying its motion for a directed verdict made at the close of the plaintiff's case.

(2) That the court should have instructed the jury to allow as a commission only a percentage of the rents actually collected.

(3) That the court erred in excluding testimony relating to the amount of time expended by the broker in locating the tenant.

## (1)

Since the first two questions are so closely interwoven, we shall treat them as one. The owner contends that the trial court erred in denying its motion for directed verdict at the close of the plaintiff's case because the testimony presented by the broker revealed that commissions become due only

when the rent is actually paid, and here there was no evidence that any rent had been paid.

This contention overlooks Maryland Rule 552 b to the effect that if a motion for a directed verdict made at the close of an opponent's case is denied, the party making the motion is deemed to have withdrawn it by offering evidence during his case-in-chief. Here, as we indicated earlier, the owner presented the testimony of two witnesses following denial of its motion at the conclusion of the plaintiff's case. By offering the evidence, it withdrew that motion, and therefore, the ruling of the trial court thereon is not open for review. *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 488-89, 250 A. 2d 653 (1969); *Glover v. Saunders*, 252 Md. 102, 105-106, 249 A. 2d 156 (1969); *Rockville Corp. v. Rogan*, 246 Md. 482, 484, 229 A. 2d 76 (1967).

As we indicated in our recital of the evidence, the owner, in its case-in-chief, presented expert testimony to the effect that when payment of a broker's commission for producing a tenant is made on a "Lump-sum" basis, the amount of the commission is usually one-half of what would have been received had payment been made as the rent was collected on a monthly basis. Therefore, this evidence was properly before the jury when the court passed upon the requested instructions at the conclusion of the entire case. *Cf. Welsh v. Welsh*, 248 Md. 619, 623-24, 237 A. 2d 739 (1968); *Hoerr v. Hanline*, 219 Md. 413, 417-18, 149 A. 2d 378 (1959); *see Schmidt v. Millhauser*, 212 Md. 585, 589, 130 A. 2d 572 (1957). With this evidence available, the broker could recover on the theory of a "lump-sum" payment notwithstanding the alleged absence of any testimony that rent actually had been collected.[1] Accordingly, there was no error in the refusal of the court to limit recovery to a percentage of rents actually collected.

---

1. It is hardly surprising, therefore, that the jury verdict equals one-half the amount usually paid in such cases, or two and one-half percent, $5,720, rounded out to $5,700.

(2)

The owner complains because it was precluded from inquiring into the actual "amount of hours spent" by the broker in procuring the tenant, and that therefore the jury was denied this evidence in evaluating the commission on the basis of quantum meruit. While it superficially might appear as though the owner was prevented from examining this alternative theory of recovery, the argument does not withstand scrutiny.

Although the declaration included a count based upon quantum meruit, a complete review of the testimony removes all doubt that from the outset of the trial, the broker relied exclusively on the "customary" or usual commission as the standard to be applied in this type of case, and never sought to prove the reasonable value of its services. Hence, there was no error, let alone prejudice, in the exclusion of the testimony.

Even the court's instructions to the jury, which went unchallenged in this particular respect, defined the value of the broker's services as "the usual and customary commission paid for such services." It is important to note that the broker's claim was predicated on Maryland Code (1974), 14-105 of the Real Property Article, which provides in pertinent part:

> "In the absence of special agreement to the contrary, if a real estate broker employed to . . . lease, or otherwise negotiate an estate, . . . procures in good faith a . . . lessee, . . . and the person procured is accepted by the employer and enters into a valid, binding, and enforceable written contract, in terms acceptable to the employer, of a . . . lease, . . . and the contract is accepted by the employer and signed by him, the broker is deemed to have earned the *customary* or agreed commission. . . ." (emphasis added).

As we suggested earlier, there was ample testimony to support the jury decision that the broker procured the tenant and was therefore entitled to a commission.

Since the theory of quantum meruit was never pursued by the broker, the only task for the jury, once it decided that a commission had been earned, was a determination of the "customary" amount to be paid. The "amount of hours spent" by the broker was not relevant to this issue. As we have said in another context, "[a] real estate broker is employed not to expend time and effort but to accomplish a particular result . . . ." *Yasuna v. National Capital Corp. of Washington,* 273 Md. 617, 331 A. 2d 49 (1975); *Nily Realty v. Wood,* 272 Md. 589, 598, 325 A. 2d 730 (1974).[2]

Essentially the jury was faced with a choice of two opinions on what is a "customary" commission, five percent or six percent. As we have indicated, it settled on five percent, but awarded only one-half of that because the broker was to be paid in a "lump-sum" manner. In any event, there was no improper exclusion of relevant testimony.

> *Judgment affirmed; appellant to*
> *pay costs.*

---

2. We have held, of course, and the jury was correctly instructed here, that the question whether a broker's efforts are the procuring cause of a lease or sale is not determined by whether his services are slight or extensive, but rather on the basis of whether the efforts he does make are in fact the proximate cause of interesting the tenant or purchaser, and producing the ultimate agreement to lease or purchase. Weinberg v. Desser, 243 Md. 347, 355, 221 A. 2d 66 (1966); Cowal v. Marletta, 216 Md. 222, 228, 139 A. 2d 712 (1958).