628 A.2d 185

**Edward John SKEENS**

v.

**Helen Martha MILLER.**

**No. 61, Sept. Term, 1992.**

Court of Appeals of Maryland.

July 27, 1993.

Edward John Skeens, Suitland, on brief, for petitioner.

Raymond M. Hertz, Greenbelt, on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

We issued a writ of certiorari in this case to determine at what time an attorney, who is retained on a contingent fee agreement and who is discharged without cause by the client prior to the occurrence of the contingency, may recover for the reasonable value of the services performed prior to discharge.

## I.

On June 28, 1989, respondent, Helen Martha Miller, retained petitioner, Edward John Skeens, to represent her in a personal injury claim arising out of an automobile accident that had occurred several days earlier. Their written agreement embodied a typical contingent fee arrangement by which Skeens was to be paid thirty-three and one-third percent of any amount recovered by Miller, whether by way of lawsuit or settlement. It also provided that in the event no recovery was made, or a lawsuit proved unsuccessful, Skeens was not entitled to any fee. Their agreement was silent as to any compensation due Skeens in the event that he was discharged by Miller prior to occurrence of the contingency.

Some fifteen months after retaining Skeens, Miller sent a letter to Skeens, discharging him as her attorney, and requesting that her file be forwarded to another attorney together with a bill for any costs incurred on her behalf. By a letter dated November 19, 1990, Skeens wrote Miller informing her that he was delivering her file to her new attorney that day and that he expected to be paid the reasonable value of the work he had performed for her. Skeens enclosed an itemized statement of his services, totaling more than eighteen hours of work. Skeens asserted that the reasonable value of

those services, at an hourly rate of $150.00, was $2,740.00.[1] Skeens informed Miller that he expected to be paid immediately regardless of whether she ever recovered on her claim. Skeens stated that, if she lacked the money to pay him immediately, he would accept an assignment of her settlement proceeds from the insurance carrier allegedly obligated to satisfy her personal injury claim.

After failing to receive either an assignment of settlement proceeds or any money from Miller, Skeens filed suit on January 11, 1991, against Miller in the District Court of Maryland, sitting in Prince George's County, for $2,740.00. In his complaint, Skeens alleged that he was discharged without cause, and based his claim solely on *quantum meruit*.

When the case was called for trial on June 19, 1991, Judge Thurman H. Rhodes granted Miller's motion to dismiss the complaint without prejudice. The trial court reasoned that the claim for *quantum meruit* was premature until there was a recovery in Miller's underlying personal injury action.

Skeens appealed to the Circuit Court for Prince George's County. In an opinion an order, Judge Larnzell Martin, Jr. affirmed the judgment of the District Court, reasoning that Skeens's claim for *quantum meruit* would arise only upon the successful occurrence of the contingency stated in the attorney-client agreement.

Skeens then appealed to the Court of Special Appeals which in turn transferred the action to this Court.[2] We subsequently granted Skeens's petition for a writ of certiorari.

---

1. How Skeens arrived at a total of $2,740.00 is not clear. In his itemized statement of services, Skeens claims to have spent 1,090 minutes on Miller's case which, when converted to hours and multiplied by his hourly rate of $150.00, would total $2,725.00. We also note that, in his itemized statement of services, Skeens appears to have expended $42.00 in costs in furtherance of Miller's claim.

2. Maryland Rule 8–132 provides:

"If the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction,

## II.

It is well settled that the authority of an attorney to act for a client is revocable at the will of the client. *Palmer v. Brown,* 184 Md. 309, 316, 40 A.2d 514, 517 (1945); *Boyd v. Johnson,* 145 Md. 385, 389, 125 A. 697, 698–99 (1924); *Western Union Tel. Co. v. Semmes,* 73 Md. 9, 18, 20 A. 127, 128 (1890); F. MacKinnon, *Contingent Fees for Legal Services* 77 (1964); S. Speiser, *Attorneys' Fees* §§ 4.24, 4.32 (1973 & Supp.1991); C. Wolfram, *Modern Legal Ethics* § 9.5.2 (1986). The client's power to discharge the attorney is an implied term of the retainer contract. *Vogelhut v. Kandel,* 308 Md. 183, 192, 517 A.2d 1092, 1097 (1986) (Rodowsky, J., concurring); *Martin v. Camp,* 219 N.Y. 170, 174, 114 N.E. 46, 48, *reh'g denied,* 219 N.Y. 627, 114 N.E. 1072 (1916), *modified on other grounds,* 220 N.Y. 653, 115 N.E. 1044 (1917); S. Speiser, *supra,* § 4:24, at 172. This right is deemed necessary in view of the confidential nature of the relationship between attorney and client and the evil that would be engendered by friction or distrust. *Martin,* 219 N.Y. at 173–74, 114 N.E. at 48; F. MacKinnon, *supra,* at 77; S. Speiser, *supra,* § 4:24, at 172.

Because the client's power to end the relationship is an implied term of the retainer contract, the modern rule is that if the client terminates the representation, with or without cause, the client does not breach the retainer contract, and thus, the attorney is not entitled to recover on the contract. *Vogelhut,* 308 Md. at 192, 517 A.2d at 1097 (Rodowsky, J., concurring); C. Wolfram, *supra,* § 9.5.2, at 546; Hillman, *Law Firms and Their Partners: The Law and Ethics of Grabbing and Leaving,* 67 Tex.L.Rev. 1, 17 (1988); Note, *Attorney–Client—Attorney's Right to Compensation When Discharged Without Cause From a Contingent Fee Contract—Covington v. Rhodes,* 15 Wake Forest L.Rev. 677, 677–78 (1979). If the client discharges the attorney for cause, the prevailing rule is that the attorney may not recover any compensation. *Attor-*

---

the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action."

ney Grievance Comm'n v. Korotki, 318 Md. 646, 669, 569 A.2d 1224, 1235–36 (1990); Vogelhut, 308 Md. at 192, 517 A.2d at 1097 (Rodowsky, J., concurring); F. MacKinnon, supra, at 77–78; S. Speiser, supra, § 4:37, at 189–90. Nevertheless, if the representation is terminated either by the client without cause or by the attorney with justification, the attorney is entitled to be compensated for the reasonable value of the legal services rendered prior to termination. Korotki, 318 Md. at 670, 569 A.2d at 1236; Vogelhut, 308 Md. at 192, 517 A.2d at 1097 (Rodowsky, J., concurring); Palmer, 184 Md. at 316, 40 A.2d at 517; Boyd, 145 Md. at 389–90, 125 A. at 699; Western Union Tel. Co., 73 Md. at 20–21, 20 A. at 128; S. Speiser, supra, 4:36, at 73–74 (Supp.1991); C. Wolfram, supra, § 9.5.2, at 546; Hillman, supra, at 17; Note, supra, at 677–78.

Because the trial court dismissed this case for failure of the petitioner's complaint to state a claim upon which relief could be granted, we assume the truth of all relevant and material facts that are well pleaded and all inferences which can reasonably be drawn from those pleadings. Figueiredo–Torres v. Nickel, 321 Md. 642, 647, 584 A.2d 69, 72 (1991); Sharrow v. State Farm Mut. Auto. Ins. Co., 306 Md. 754, 768, 511 A.2d 492, 499–500 (1986). Therefore, for purposes of the instant appeal we consider Miller to have terminated Skeens's representation without cause.

### III.

Although courts generally agree that an attorney discharged without cause is entitled to be compensated for the reasonable value of legal services rendered prior to discharge, there is no clear consensus on the issue which we have never squarely addressed and which is the subject of the instant case. Namely, where an attorney has been retained on a contingent fee agreement and has been discharged without cause prior to the occurrence of the contingency, thereby entitling the attorney to be compensated for the reasonable value of the legal services rendered prior to discharge, when

does his cause of action accrue.[3]

Other courts that have addressed this issue follow one of two schools of thought referred to as the "California rule" and the "New York rule." Courts following the California rule hold "that the cause of action to recover compensation for services rendered prior to the revocation of a contingent fee contract does not accrue until the occurrence of the stated contingency." *Fracasse v. Brent,* 6 Cal.3d 784, 792, 494 P.2d 9, 15, 100 Cal.Rptr. 385, 390–91 (1972); *see also Rosenberg v. Levin,* 409 So.2d 1016, 1022 (Fla.1982); *Plaza Shoe Store, Inc. v. Hermel, Inc.,* 636 S.W.2d 53, 59–60 (Mo.1982); *Clerk of Superior Court v. Guilford Builders Supply Co., Inc.,* 87 N.C.App. 386, 390, 361 S.E.2d 115, 118 (1987), *cert. denied,* 321 N.C. 471, 364 S.E.2d 918 (1988); *First Nat'l Bank & Trust Co. v. Bassett,* 183 Okl. 592, 595, 83 P.2d 837, 840 (1938). Under that rule, it follows that the discharged attorney will be denied compensation in the event recovery is not obtained in the case which was being handled under a contingent fee agreement. *Fracasse,* 6 Cal.3d at 792, 494 P.2d at 14, 100 Cal.Rptr. at 390; *Rosenberg,* 409 So.2d 1022; *Plaza Shoe Store, Inc.,* 636 S.W.2d at 59; *Clerk of Superior Court,* 87 N.C.App. at 390, 361 S.E.2d at 118.

The Supreme Court of California adopted its rule for two reasons.

"First, one of the significant factors in determining the reasonableness of an attorney's fee is 'the amount involved and the result obtained.' It is apparent that any determination of the 'amount involved' is, at best, highly speculative until the matter has finally been resolved. Second, and

---

3. Although not speaking for the Court, Judge Rodowsky, concurring in *Vogelhut v. Kandel,* 308 Md. 183, 517 A.2d 1092 (1986), stated:

"If the client terminates the representation without cause, the attorney is entitled to be compensated for the reasonable value of the legal services rendered prior to termination. . . .

"Thus, as a matter of legal theory, [the client has] a present obligation as of the time of termination to pay [the attorney] the reasonable value of the services rendered by [the attorney]."

*Id.* at 192, 517 A.2d at 1097 (citations omitted). In *Vogelhut,* the majority of the Court failed to reach this issue.

perhaps more significantly, we believe it would be improper to burden the client with an absolute obligation to pay his former attorney regardless of the outcome of the litigation. The client may and often is very likely to be a person of limited means for whom the contingent fee arrangement offers the only hope of establishing a legal claim. Having determined that he no longer has the trust and confidence in his attorney necessary to sustain that unique relationship, he should not be held to have incurred an absolute obligation to compensate his former attorney."

6 Cal.3d at 792, 494 P.2d at 14, 100 Cal.Rptr. at 390. Courts following the California rule have amplified the reasons for deferring the accrual of the cause of action until the occurrence of the contingency. Courts have stated that such a rule furthers the public policy of allowing clients to freely discharge their attorneys, *Rosenberg,* 409 So.2d at 1022; *Plaza Shoe Store, Inc.* 636 S.W.2d at 59, deferring the cause of action does not harm the attorney because the attorney would not have benefited earlier until the occurrence of the contingency, *Rosenberg,* 409 So.2d at 1022, the rule promotes the broad objective of promoting greater confidence in the profession and the attorney-client relationship, *Plaza Shoe Store, Inc.,* 636 S.W.2d at 60, and any possible injustice to the attorney is avoided because a judgment could be worthless if the client's underlying suit is not successful, *Bassett,* 183 Okl. at 595, 83 P.2d at 840.

Courts following the New York rule hold that the discharged attorney's cause of action accrues immediately upon the termination of the attorney's services without cause, rather than being deferred until the happening of the contingency. *Martin v. Camp,* 219 N.Y. at 177, 114 N.E. at 48–49; *Tillman v. Komar,* 259 N.Y. 133, 136, 181 N.E. 75, 76 (1932); *see also Booker v. Midpac Lumber Co.,* 65 Haw. 166, 170, 649 P.2d 376, 379 (1982); *In re Estate of Callahan,* 144 Ill.2d 32, 40, 161 Ill.Dec. 339, 342, 578 N.E.2d 985, 988 (1991); *Adkin Plumbing & Heating Supply Co., Inc. v. Harwell,* 135 N.H. 465, 468, 606 A.2d 802, 804 (1992); *cf. Heinzman v. Fine, Fine, Legum & Fine,* 217 Va. 958, 964, 234 S.E.2d 282, 286 (1977) (discharged

attorney entitled to charging lien as security for a fee based upon *quantum meruit* for services rendered prior to discharge).

In *Tillman v. Komar,* the Court of Appeals of New York provided two reasons for adoption of the rule allowing the cause of action to accrue immediately upon termination of the attorney-client relationship. First, the client cannot make the attorney's recovery dependent upon a contract term when the client has terminated the contract. 259 N.Y. at 135, 181 N.E. at 75. In the words of the Court of Appeals of New York: "The client is entitled to cancel his contract of retainer but such an agreement cannot be partially abrogated. Either it wholly stands or totally falls." *Id.* Second, the *Tillman* court stated:

> "The value of one attorney's services is not measured by the result attained by another. This one did not contract for his contingent compensation on the hypothesis of success or failure by some other member of the bar. A successor may be able to obtain far heavier judgments than the efforts of the original attorney could secure, or, on the other hand, inferior equipment of a different lawyer might render futile an attempt to prove damage to the client."

259 N.Y. at 135–36, 181 N.E. at 76.

In *In re Estate of Callahan,* the Supreme Court of Illinois expanded on the rationale for the New York rule by providing three additional reasons for its adoption. First, the court stated that *quantum meruit* is based on the implied promise to pay for those services which are of value to a recipient, and the recipient would be unjustly enriched if he were able to retain the services without paying for them. 144 Ill.2d at 40, 161 Ill.Dec. at 342, 578 N.E.2d at 988. The court concluded that the attorney's recovery should not be linked to a contract contingency when the attorney's recovery is not based upon the contract, but upon *quantum meruit. Id.* at 40–41, 161 Ill.Dec. at 342, 578 N.E.2d at 988. Second, the court believed that the outcome of the litigation is not an indispensable element that must be considered in calculating the value of an

attorney's services. *Id.* at 41, 161 Ill.Dec. at 342, 578 N.E.2d at 988. Finally, the court opined that because the former client is liable only for the reasonable value of the services received prior to discharge, if the attorney's services were of little or no value to the former client, any injustice to the client would be avoided by no award or a minimal award of attorney's fees. *Id.* at 41–42, 161 Ill.Dec. at 343, 578 N.E.2d at 989.

Like the split among the various courts, commentators that have addressed this issue have not reached a consensus. In his 1991 supplement, Speiser states without much discussion that:

"The better rule to be followed, because of the peculiarity of attorney-client relationships, is that the client should have a right to discharge without cause an attorney employed under a contingent fee agreement and, upon such discharge, the attorney would be limited to a quantum meruit recovery for his services performed to the date of discharge, rather than recovering on the basis of the percentage provided in the agreement, *and that no such recovery based on quantum meruit may be had until such time as the contingency provided for in the original agreement has occurred.*"

S. Speiser, *supra*, § 4:36, at 73–74 (Supp.1991) (emphasis supplied). Other commentators disagree. *See* Note, *Limiting the Wrongfully Discharged Attorney's Recovery to Quantum Meruit—Fracasse v. Brent,* 24 Hastings L.J. 771, 791–92 (1973); Note, *Attorney–Client—Attorney's Right to Compensation When Discharged Without Cause From a Contingent Fee Contract—Covington v. Rhodes,* 15 Wake Forest L.Rev. 677, 684–87 (1979) ("The claim for relief . . . should arise immediately upon discharge.").

We have repeatedly held that an attorney discharged without cause is entitled to be compensated for the reasonable value of the legal services rendered prior to discharge. *See Palmer v. Brown,* 184 Md. 309, 316, 40 A.2d 514, 517 (1945); *Boyd v. Johnson,* 145 Md. 385, 389, 125 A. 697, 699 (1924); *Western Union Tel. Co. v. Semmes,* 73 Md. 9, 18, 20 A. 127,

128 (1890). In *Western Union Tele. Co. v. Semmes,* two attorneys were retained on a contingent fee agreement to represent a telegraph company. 73 Md. at 17–18, 20 A. at 127–28. The attorneys' representation was terminated when the telegraph company terminated the litigation prior to the successful occurrence of the contingency. *Id.* The attorneys brought suit against the telegraph company claiming that they were ready and willing to prosecute the suit to a successful completion, that they were prevented from doing so by the telegraph company, and that they were entitled to the contingent compensation. *Id.* at 18, 20 A. at 128. Our predecessors rejected the notion that the attorneys were entitled to the contingent compensation but went on to state:

"Although the defendant had a right to terminate the litigation, yet the [attorneys] had rendered services to it, on the faith of a contract. It was not intended by either party that these services should be gratuitous.... [The attorneys] had entered into a contract for services; in the prosecution of this contract they had performed work and labor, and were ready to carry it out to the end, when by the act of the other party, they were prevented from proceeding. We think that the law on this point is settled. In *Rodemer vs. Hazlehurst & Co.,* 9 *Gill,* 294, the Court, quoting from *Smith's Leading Cases,* said:

'Where there is a special contract, and the plaintiff has performed a part of it according to its terms, and has been prevented by the act or consent of the defendant from performing the residue, he may in general *assumpsit* recover for the work actually performed, and the defendant cannot set up the special contract to defeat him.' To the like effect is *Bull vs. Schuberth,* 2 Md., 57, where it is said: 'If the special agreement has been put an end to by the defendant, or the performance of it on the part of the plaintiff prevented by some act of the defendant; in all such cases the plaintiff may resort to, and recover under the common counts, for whatever may be due for so much of the contract as may have been performed.' These cases are supported by a vast amount of authority, and they announce

a doctrine eminently just and reasonable. The Court below ruled that the [attorneys] were entitled to a reasonable compensation for the work and labor actually done by them; but that they were not entitled to the contingent compensation. Without reciting the prayers on the opposite sides, it is sufficient for us to say that this ruling disposed of the case with justice to both parties."

*Id.,* 73 Md. at 20–21, 20 A. at 128–29. *Rodemer v. Henry Hazlehurst & Co.,* 9 Gill 288 (1850), one of the cases relied on by the Court in *Western Union Tele. Co.,* although not involving the termination of an attorney-client relationship, provided equally salient reasoning. The Court in *Rodemer* stated:

"If one party rescinds the contract, how can it be said to subsist as regards the other? . . . Because once repudiated by the defendant, it cannot bind one and not the other. And. the party thus injured by the abandonment of the contract is not bound to resort to his special action, but may rely upon the implied legal liability of the other to compensate the services rendered, and may claim the adjustment in *indebitatus assumpsit* upon the basis of the work which he has actually performed. To defeat this, the defendant cannot be allowed to set up the special contract, which he was the first to violate and abandon. It would be manifestly unjust to allow him to do so, nor is it sanctioned by any principle of law or of pleading. . . .

"All the authorities agree that by putting an end to the contract by one party, it must be considered as abandoned by him and if his acts in so doing are such as necessarily to prevent a performance on the part of the other, the whole contract must be considered as rescinded, and the other party may resort to his *quantum meruit.*"

9 Gill at 293–94.

In *Boyd v. Johnson,* we quoted from *Western Union Telegraph Co.* and held that an attorney, who is retained on a contingent fee agreement and discharged prior to the occurrence of the contingency, acquires no vested interest in the

client's suit, but may recover the reasonable value of the services rendered prior to discharge. 145 Md. at 389–90, 125 A. at 699. In *Palmer*, a lawyer, who was retained under a contingent fee agreement by the owner of a farm to pursue a claim in the nature of inverse condemnation against the United States, was discharged by the client when the client decided to sell his farm to the government and withdraw his claim. 184 Md. at 311–15, 40 A.2d at 515–17. In affirming a judgment in favor of the attorney on his suit in *quantum meruit*, we reasoned:

> "It may be conceded that the appellant had the right to terminate the contract of employment and to effect a settlement of his claim without his former attorney's intervention, knowledge or consent (*Boyd v. Johnson, supra*), but it is equally well settled that for services rendered in good faith in part performance of the canceled contract the attorney may recover under the common counts 'for whatever may be due for so much of the contract as may have been performed.' *Bull v. Schuberth* [2 Md. 38, 57 (1852)]."

184 Md. at 316, 40 A.2d at 517.

Furthermore, in *Vogelhut v. Kandel*, 308 Md. at 190–91, 517 A.2d at 1096, we reasoned that an attorney who had been retained on a contingent fee basis was entitled to assert immediately his right to a retaining lien based upon the reasonable value of the legal services he rendered prior to his discharge without cause. Therefore, we held that his relinquishment of that lien upon the file of his client furnished sufficient consideration to support his successor attorney's promise to share the fee ultimately earned from the client with the discharged attorney. Significantly, in each of these cases we held that the unfulfilled contingency in the fee agreement which had been rescinded by the client had no effect upon the attorney's right to recover the reasonable value of the services performed by the attorney pursuant to the agreement. We are persuaded that the rationale of the courts adopting the New York rule is consistent with our view of the rights and liabilities of the parties to a contingent fee agreement. Accordingly, we hold that, where an attorney has

been discharged without cause, the attorney's claim in *quantum meruit* accrues immediately upon discharge, notwithstanding the fact that the contingency has not occurred. We agree with our predecessors and the courts following the New York rule that a client who without cause terminates a contingent fee agreement may not thereafter resurrect the contingency term as a defense when the discharged attorney files a fee claim. *Western Union Tel. Co.*, 73 Md. at 20, 20 A. at 128; *In re Estate of Callahan*, 144 Ill.2d at 40, 161 Ill.Dec. at 343, 578 N.E.2d at 989; *Tillman*, 259 N.Y. at 135, 181 N.E. at 75 ("Either [the contract] wholly stands or totally falls.").

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION, COSTS TO BE PAID BY RESPONDENT.**

Dissenting Opinion by ELDRIDGE, J., in which MURPHY, C.J., and ROBERT M. BELL, J., join.

ELDRIDGE, Judge, dissenting.

The majority in this case adopts the so-called "New York rule" as to when an attorney may sue for the value of services rendered prior to a client's termination of a contingent fee agreement, holding that the attorney may recover as soon as the contingency contract is terminated. This decision is contrary to established Maryland agency law and to sound public policy.

The basis of the New York rule is that "a client cannot make the attorney's recovery dependent upon a contract term when the client has terminated the contract." 331 Md. 331, 339, 628 A.2d 185, 189 (1993); citing *Tillman v. Komar*, 259 N.Y. 133, 135, 181 N.E. 75, 75 (1932). The crux of the majority's reasoning in adopting this approach is that "the rationale of the courts adopting the New York rule is consis-

tent with our view of the rights and liabilities of the parties to a contingent fee agreement." 331 Md. at 343, 628 A.2d at 191. This view of Maryland law is based on the majority's analysis of the Maryland cases which have addressed an agent's recovery when a contingent fee contract has been terminated. The majority reviews seven Maryland cases, and concludes that, "in each of these cases we held that the unfulfilled contingency in the fee agreement which had been rescinded by the client had no effect upon the attorney's right to recover the reasonable value of the services performed by the attorney pursuant to the agreement." *Id.*

If the majority's characterization of our cases were accurate, perhaps the Court's decision to adopt the New York rule would be defensible on the basis of stare decisis, although not as a matter of public policy. The majority, however, mischaracterizes the Maryland cases cited. In fact, none of the seven Maryland cases relied upon by the majority involved an *unfulfilled* contingency in a fee agreement, and none of the cases cited furnish any support for the majority's notion that an attorney may recover a fee from the former client before the happening of the contingency provided for in the terminated contract. Moreover, this Court has held in several cases, not cited by the majority, that an agent may *not* sue to recover for services rendered pursuant to a contingent fee contract as long as the contingency remains unfulfilled.

Four of the cases cited by the majority addressed the *measure*, rather than the *timing*, of an agent's recovery on a contingent fee contract: *Palmer v. Brown*, 184 Md. 309, 40 A.2d 514 (1945); *Boyd v. Johnson*, 145 Md. 385, 125 A. 697 (1924); *Western Union Telegraph Co. v. Semmes*, 73 Md. 9, 20 A. 127 (1890); and *Bull v. Schuberth*, 2 Md. 38 (1852). In each of these cases the contingency in the underlying contract had been fulfilled. In *Bull v. Schuberth, supra,* a talent agent entered into a contract with a musician, in which the agent's fee was expressed in terms of a percentage of profits to be realized from a series of concerts. After playing two concerts under the agreement, the musician fired the agent. This Court held that the agent was entitled be paid for his services

to the musician, given that the musician had already realized profits from the concerts. There was no issue as to whether the agent could recover before the happening of the contingency, because the "contingency" in the original contract—the realization of profits—was fulfilled.

Similarly, in *Western Union Telegraph Co. v. Semmes, supra,* attorneys retained under a contingent fee contract were dismissed before the conclusion of the matter, but they did not bring suit until the matter was settled between the former client and its adversary. The contingency provision of the terminated contract was fulfilled by the settlement, so the Court did not address the timing issue which is presented by the instant case. Instead, the Court's attention was directed only to the measure of the attorneys' recovery. In *Boyd v. Johnson, supra,* an attorney who had been retained on a contingency basis to challenge a will was discharged before the trial. The attorney instituted a suit against the former client after judgment was entered in favor of his client in the underlying proceeding. Thus, the contingency was fulfilled by the recovery of a judgment in the former client's favor. In *Palmer v. Brown, supra,* an attorney brought suit after his client settled the underlying action and received payment. The Court held that the attorney was entitled to compensation for his services. The Court did not address whether the attorney could recover before the happening of the contingency, because the event upon which his compensation was contingent—resolution of the client's case—had already occurred.

The only other case cited by the majority which even involved a contingent fee dispute between attorney and client is *Attorney Griev. Comm'n v. Korotki,* 318 Md. 646, 569 A.2d 1224 (1990). The *Korotki* case itself was a disciplinary proceeding, based upon an attorney charging his clients a grossly unreasonable contingent fee. The proceeding did not arise until after the contractual contingency came to pass, as a judgment had been obtained and had been satisfied. The case in this Court concerned the reasonableness of the contingent fee and the appropriate discipline. Neither the measure nor the timing of the attorney's recovery was at issue in *Korotki.*

The majority quotes at length from *Rodemer v. Hazlehurst,* 9 Gill 288 (1850), as indicative of this Court's concurrence with the underpinnings of the New York view. The case, however, does not support the majority's reasoning. As the majority notes, the *Rodemer* case did not involve the termination of an attorney-client relationship. The Court in *Rodemer* held that a *breaching* party may not raise provisions of the breached contract as a defense. As the majority recognizes, however, a client's termination of a retainer contract with an attorney cannot constitute a breach of contract, 331 Md. at 335, 628 A.2d at 187. Moreover, there was no contingent contract at issue in *Rodemer* at all. The contract called for payment in installments, based on the value of the plaintiff's construction work for the defendant as of specified intervals, to be calculated according to a formula set forth in the contract. This Court described the payment arrangement, stating (9 Gill at 291):

"In the contract is a stipulation, that during the progress of the work and until it is completed, there shall be a monthly estimate made by the agent of the defendants of the quantity, character and value of the work done during the month, four-fifths of which value shall be paid to the plaintiff at the office of the defendants in the Town of Cumberland, and when the work is completed and accepted by the agents of the company, there shall be a final estimate, when the value appearing to be due to the plaintiff, shall be paid, the said monthly estimates to be taken as conclusive between the parties."

The plaintiff did not agree to perform services for the defendant on a contingency basis, thereby accepting the risk that the contingency might never be realized and that he might not be paid. Instead, the plaintiff entered into a standard contract, guaranteeing pay for his efforts. The *Rodemer* case does not furnish support for any proposition relating to the time when an attorney may obtain compensation for services rendered before termination of a contingent fee contract.

The majority relies upon the Court's opinion in *Vogelhut v. Kandel,* 308 Md. 183, 190–191, 517 A.2d 1092, 1096 (1986), and

upon a statement contained in the concurring opinion in that case, 308 Md. at 192, 517 A.2d at 1097 (Rodowsky, J., concurring). Only the statement in the concurring opinion, quoted by the majority 331 Md. at 337 n. 3, 628 A.2d at 188 n. 3, to the effect that a client has an immediate obligation to pay his or her discharged attorney, provides any authority for the majority's view. The concurring opinion in *Vogelhut* represented the view of only one judge, the author of the concurring opinion. No other judge joined the concurring opinion. Furthermore, the *Vogelhut* concurring opinion cites no authority whatsoever in support of its assertion. Additionally, the *Vogelhut* case itself is clearly distinguishable from the case at bar. It did not involve a fee dispute between a discharged attorney and a former client, but instead arose out of a negotiated fee sharing arrangement between the discharged attorney and the new attorney. The "fee suit" was between the discharged attorney and the new attorney, who refused to pay as promised. The public policy considerations underlying the law governing fee disputes between attorneys and clients are different from the considerations presented by fee sharing arrangements between attorneys. Most importantly, the fee dispute was not based on an unfulfilled contingency; the new attorney negotiated a settlement of the client's case before the dispute arose between the attorneys. Thus, the case did not involve the timing issue presented by this case.

Moreover, the majority's discussion of the Court's reasoning in *Vogelhut* is completely inaccurate. The majority states, 331 Md. at 343, 628 A.2d at 191, "we reasoned that an attorney who had been retained on a contingent fee basis was entitled to assert immediately his right to a retaining lien based upon the reasonable value of the legal services he rendered prior to his discharge without cause." This was not the reasoning of the Court; it was the reasoning set forth in the concurring opinion. Furthermore, the case did not involve the discharged attorney's right immediately to assert a retaining lien, as the attorney did not attempt to do so. The majority's inaccurate statement of the Court's reasoning leads it to an inaccurate

characterization of the Court's holding. The Court in *Vogelhut* did not hold that relinquishment of the lien furnished consideration for the fee sharing agreement, as the majority states, 331 Md. at 343, 628 A.2d at 191. The Court held that mere delivery of the file furnished consideration, the adequacy of which the Court would not question. 308 Md. at 190–191, 517 A.2d at 1096. The case also did not involve any claim by the attorney based on the reasonable value of his services; instead, the new attorney attempted to pay the discharged attorney on a reasonable value basis in order to avoid paying him the negotiated portion of the fee. *See* 308 Md. at 187, 517 A.2d at 1094.

As the above review demonstrates, no Maryland case cited by the majority supports the notion that Maryland law requires adoption of the New York rule. Other Maryland cases, however, support the opposite view, namely that an agent hired under a contingent fee contract has no right at all to recover for services rendered prior to termination if the contingency does not come to pass.

For example, we held in *Childs v. Ragonese*, 296 Md. 130, 136, 460 A.2d 1031, 1034 (1983), that an agent could not retain a sales commission because the sale was not actually consummated. Consequently, the client had a right to a refund of the commission already paid. *See also Berman v. Hall*, 275 Md. 434, 340 A.2d 251 (1975); *Wyand v. Patterson Agency*, 271 Md. 617, 319 A.2d 308 (1974). Under our cases, an agent hired pursuant to a contingent fee contract is not entitled to be compensated until the contingency has been fulfilled. This principle "is not part of a body of law peculiar to real estate brokers. Instead, as the cases make clear, it is a rule of contract interpretation applicable to agents generally." *Childs, supra,* 296 Md. at 136, 460 A.2d at 1034, citing, *inter alia,* J. Russell, *A Treatise On The Laws Relating To Factors And Brokers,* 159–160 (1845). An attorney-client relationship is an agency relationship, and is governed by principles of agency law. *Switkes v. John McShain*, 202 Md. 340, 96 A.2d

## 350

617 (1953).[1]  Under principles of Maryland agency law, an agent who, under a contract or custom and usage, is to be compensated from funds which the agent is to assist the principal in recovering, is not entitled to compensation until there is a recovery.[2]

The Court today shows extraordinary concern for attorneys' pecuniary interests.  These interests are already well-protected by existing principles of Maryland law.  For example, the cases cited by the majority establish that a discharged attorney who had a contingent fee contract with the client may be entitled to some recovery after the occurrence of the contingency.  In addition, if a third party improperly interferes with an attorney-client retainer contract, the attorney may bring an

---

1.  The general agency principle that an agent must wait for the fulfillment of the contingency set forth in a contingent fee contract in order to receive compensation already may have been applied to an attorney. We noted in *Childs v. Ragonese*, 296 Md. 130, 136 n. 3, 460 A.2d 1031, 1034 n. 3 (1983), that an early case to this effect, *Keener v. Harrod*, 2 Md. 63, 56 Am.Dec. 706 (1852), "does not indicate whether the 'agent' was a real estate broker, auctioneer, *attorney*, or other type of agent." (Emphasis added).

2.  The majority would allow the attorney to recover now, even though there is no recovery out of which the attorney's percentage fee can be taken, on the theory of *quantum meruit*.  As stated above, in my view, there can be no recovery for the attorney until there has been a recovery for the client.

   Moreover it may be doubted whether, under a contingent fee arrangement such as this, the principle of *quantum meruit* ordinarily applies under Maryland law.  An agent who has entered into a contingent fee arrangement with a principal is normally only entitled to be paid out of the particular funds obtained.  *See Melvin v. Aldridge*, 81 Md. 650, 658–659, 32 A. 389, 391 (1895) (holding that the agent's compensation must be paid out of funds actually received by the principal); *McCullough v. Pierce*, 55 Md. 540, 546 (1881) (same).  Our cases have indicated that where an agent undertakes to obtain a particular result for a principal, where the undertaking is to perform the service in exchange for a percentage of the recovery, and where the agent is not entitled to any fee absent a recovery, *quantum meruit* has little or no place.  Under these circumstances, the agent " 'is employed not to expend time and effort but to accomplish a particular result.' "  *Yasuna v. Nat'l Capital Corp.*, 273 Md. 617, 626, 331 A.2d 49, 54 (1975), quoting *Nily Realty v. Wood*, 272 Md. 589, 598, 325 A.2d 730, 736 (1974).  *See Steward Village v. Melbourne*, 274 Md. 44, 50–51, 332 A.2d 626, 629 (1975).

action against the third party.  *See Sharrow v. State Farm Mutual,* 306 Md. 754, 511 A.2d 492 (1986).

The majority shows far less concern for clients' pecuniary interests.  Under the rule announced today, a dissatisfied client who wishes to exercise his or her absolute right to discharge an attorney, will have to pay attorneys' fees immediately, out of pocket, rather than out of any recovery, as bargained for.  This rule undoubtedly will work tremendous hardship on exactly those clients who require contingent fee arrangements, *i.e.,* those who would not otherwise be able to afford to hire an attorney.  Many of these clients will end up paying legal fees twice, first to the discharged attorney and then to any new attorney out of any recovery.  In many cases, the client may have to pay a discharged attorney immediately, and then might not recover on the claim at all; thus, the discharged attorneys' services, for which the client may have paid dearly, might turn out to be worthless.  The majority's decision extends beyond those clients who hire a new lawyer.  In some cases, clients who retain attorneys under contingent fee arrangements may, in good faith, decide not to pursue their claims.  The discharge of the attorney under such circumstances is presumably "without cause."  These clients still will be required to pay attorneys' fees.

Concern for the welfare of the client is embedded in the policies of this State.  For instance, Maryland Rule of Professional Conduct 1.5 governing "Fees" specifies that the reasonableness of a fee is dependent on "the amount involved and the results obtained."  Rule 1.5(a)(4).  The Rule generally expresses concern that a client be charged fairly for legal services.  The Comment to this Rule further suggests that, when an attorney undertakes to represent a client under a contingent fee agreement, that attorney cannot reasonably expect compensation for services rendered until the happening of the contingency.  The very definition of a contingent fee, set forth in the Comment to Maryland Rule of Professional Conduct 1.5, communicates this idea.  The Comment defines a contingent fee agreement as

"an agreement for legal services (1) made before the services are completed, and (2) providing compensation for the lawyer which is contingent in whole or in part upon the successful accomplishment or disposition of the legal matter and which is either in a fixed amount or in an amount determined under a specified formula."

The New York rule adopted by the majority today is not in keeping with the public policy reflected in the above-quoted Comment.

The common understanding of most people in Maryland, which is reinforced every day by attorneys' television, newspaper, telephone book and other advertisements, is that when an attorney is retained in a personal injury case on a contingent fee basis, there is *without exception* "no fee if no recovery." C & P Telephone, Yellow Pages, *Greater Baltimore Metropolitan Area* at 554 (Suburban West Edition, Nov. 1992—Oct. 1993). *See also, e.g., id.* at 550 ("No Recovery No Fee"); *id.* at 552 ("No Recovery—No Fee (On Injury Claims)); *id.* at 556 ("No Recovery No Fee For Personal Injury Cases"); *id.* at 557 ("No Fee If No Recovery"); *id.* at 558 ("No Fee Unless You Win (Client may be responsible for expenses)"); *et seq.* As previously discussed, Maryland cases dealing with agents generally are in accord with this common understanding. The majority today, however, creates a favored class of agents— lawyers—and holds that under the circumstances of this case, a lawyer hired on a contingent basis is entitled to a fee even though there is no recovery. In my view, this special treatment of lawyers is entirely unjustified.[3]

---

3. As the majority acknowledges, the contingent fee agreement in this case "was silent as to any compensation due Skeens in the event that he was discharged by Miller prior to the occurrence of the contingency." 331 Md. at 333, 628 A.2d at 186. The majority, however, creates an implied-in-law exception to the standard arrangement in personal injury cases of "no recovery, no fee." In my view, if an attorney desires to protect his or her interests in the event the client discharges the attorney before a recovery is obtained, the attorney can include in the agreement the promise, "no recovery, no fee, unless you discharge me without cause prior to the recovery." In light of the general obligation of attorneys to apprise their clients of the fee arrangement, any attorney

I would affirm the judgment of the District Court, affirmed by the circuit court, dismissing the complaint.

Chief Judge MURPHY and Judge ROBERT M. BELL have authorized me to state that they concur in the views expressed herein.

---

who wishes to avail himself of the majority's holding in this case ought to be required to disclose to his potential clients that there is an instance in which the client will have to pay the attorney even though there is no recovery. Otherwise, I believe that the representation of "no recovery, no fee" would be misleading.